Leo Eugene STACK, III, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 46A03–8803–CR–77.

Court of Appeals of Indiana,
Third District.

Feb. 20, 1989.

Earl I. Studtmann, Portage, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Leo E. Stack, III appeals his conviction of resisting arrest and presents the following five issues for our review:

I. Whether there was sufficient evidence to sustain Stack's conviction for resisting law enforcement and battery?

II. Whether the court erred in denying Stack's motion for a directed verdict at the close of the state's case? [1]

III. Whether the court erred in refusing Stack's requested instruction on resisting unlawful arrest?

IV. Whether the verdicts are "inconsistent," and, hence, contrary to law?

V. Whether the trial contained acts of prosecutorial misconduct, mandating a reversal?

Reversed.[2]

On January 23, 1987, an escaped prisoner roamed the vicinity of Leo Stack, III's (Stack's) place of business. Seeing policemen outside of his building, Stack went outside, spoke with one of the officers, and then helped direct the officers to places in which the convict could be hiding. Eventually, the prisoner was apprehended, but because he had jumped from a second floor window of the courthouse to escape, the prisoner's head was bleeding. Approximately 20–25 policemen were in the area by this time, and the prisoner was surrounded by a circle of policemen.

Seeing the circle of officers, Stack approached them to see "what they were doing," (Record, p. 340), and then saw the prisoner on the ground. However, noticing that the prisoner's head was bleeding, Stack suggested that the officers elevate his head above the rest of his body. Testimony indicates that the officers told Stack that they would handle the situation.

As Stack walked away from the circle of policemen, he met Randall Miller (Miller), who was getting out of his car. Miller was emerging from a white, slightly dirty car, which, according to testimony, was not one of the unmarked police cars which are "identifiable" as such. Miller was dressed in blue jeans, a sweater, sneakers, and a black army jacket which went past his hips. Stack told Miller how he thought the policemen were handling the situation, and, after listening to Miller's response, Stack concluded that he, Stack, thought Miller was an "asshole."

---

1. *See,* Indiana Rules of Procedure, Trial Rule 50, "Judgment on the Evidence."

2. Because of our disposition of Issue I, we need not reach the remaining issues.

After Stack voiced his opinions to Miller, Miller suggested that he be careful, lest he be arrested "for interfering." (Record, p. 295). Some testimony indicates that Stack responded by answering that he could say what he wished. However, unknown to Stack because of Miller's civilian dress, Miller was actually a policeman who worked on the narcotics division.

As Stack and Miller were ending their conversation, a bystander called to Stack to join him, and Stack began to walk away from Miller toward that person. However, Miller had apparently decided to arrest Stack, and, without identifying himself as an officer nor telling Stack that he was under arrest, Miller reached for and touched the back of Stack's shoulder as Stack was walking away. In response, Stack swung around, and the two began to brawl, rolling on the ground. It is undisputed that Miller never identified himself as an officer and never told Stack that he was under arrest.

The informations charge Stack with disorderly conduct, resisting law enforcement and battery. Stack was acquitted of the disorderly conduct charge and found guilty of resisting law enforcement and battery. The court withheld judgment on the battery conviction, but it sentenced Stack to thirty (30) days and costs for the conviction of resisting law enforcement, with ninety (90) days probation following his release.

## I.

### Sufficiency of the Evidence

■ Stack asserts that the evidence is insufficient to support his conviction for resisting law enforcement in part because the requirements of the statute were not met. Specifically, Stack argues that Miller was not "engaged in the execution of his duties as an officer," and that he appeared to be a civilian.

Upon review for sufficiency of evidence, we do not reweigh evidence nor judge witness credibility. *McNeely v. State* (1988), Ind.App., 529 N.E.2d 1317, 1327. Instead, we look at the evidence most favorable to the judgment, along with the reasonable inferences which follow. *Id.* We will reverse only when there is a lack of "substantial evidence of probative value" from which a trier of fact could find guilt beyond a reasonable doubt. *Id.*

The statute which outlines the crime of resisting law enforcement reads as follows:

35-44-3-3  Resisting law enforcement

Sec. 3.  (a) A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;

(2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

(3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

West's A.I.C. § 35-44-3-3(a) (Supp.1988). As Stack was convicted under subsection (1) of the above statute, the state had to prove the elements listed in that subsection.

■ Additionally, while not clear from the statute, caselaw clearly states that the person being arrested had to, at least, "have reason to know" that the person he was dealing with is an officer. In *Sayles v. State* (1987), Ind.App., 513 N.E.2d 183, *reh. denied, trans. denied,* this court stated: "[t]o convict under this statute [I.C. 35-44-3-3] the evidence must show that the defendant knew or had reason to know that the person resisted is a police officer." *Sayles, supra,* at 187, citing among others, *Casselman v. State* (1985), Ind.App., 472 N.E.2d 1310, 1316.

In this case, the evidence is unequivocal that Stack had no reason to believe that Miller was an officer. According to Miller's own testimony, Miller was dressed as a civilian—in blue jeans and a sweater. Miller also stated that his badge was on his belt, hidden from view; he had no police

hat on which would have indicated that he was an officer; and, his gun was under his jacket, also hidden from view. Testimony of a bystander indicated that Miller's gun was in a holster on the back of his belt, under his jacket; the gun was only apparent to this witness because he chanced to see Miller bend over as he was reaching for something in his car. Additionally, as the two were fighting, and two police officers came over to break it up, one of the officers did not recognize Miller as a police officer until they pulled the two apart and he saw Miller's face. The other officer knew Stack and Miller were conversing prior to the fight.

Officer Miller's exact testimony is as follows:

Q And you had on blue jeans, a sweater, and a black jacket.

A Field jacket, that's correct.

Q Now, that would be one that goes below your hips?

A Ya, slightly.

Q So, it covers your gun hold holster?

A Yes.

Q And it covers your badge.

A Yes, sir.

Q Did you have any sort of hat that would indicate that you were a police officer?

A No, sir.

(Record, pp. 295, 11. 21–25, p. 296, 11. 1–7)

Q Okay. Tell us then what happened when you and Mr. Stack confronted each other.

A Well, initially, I told him politely that if he persists, he's probably going to end up in jail, you know, for interfering.

Q Let me ask you, Officer Miller, did you ever identify yourself as a police officer?

A I never said I'm a police officer, no.

(Record, p. 278, 11. 13–20)

Q You never identified yourself as a police officer.

A I never said I'm a police officer.

(Record, p. 288, 11. 11–12)

Q —You never announced that you were a police officer?

A No, I never said that I was a police officer.

(Record, p. 307, 11. 23–25)

Q —Well, how far did you get? Did you say you're under arrest or you're under or—

A —I probably got you're under out, that's about it.

Q Okay. So you never told him he was under arrest.

A I don't think I got every word out before he hit me.

(Record, p. 314, 11. 2–8)

Q Did you in fact advise him that he might be placed under arrest for disorderly conduct for interfering with a police officer prior to that?

A When I first talked to him, I tried to tell him nicely that he was aggravating a lot of people and that if he persisted, he probably would be arrested for interfering.

(Record, p. 319, 11. 1–7)

Finally, while there was testimony that Miller had a police radio in his hand, the dimensions of the radio were described as being two and one-half (2½) inches wide, and only as long as the microphone used in the courtroom. Too, although Miller apparently told Stack that if he didn't watch what he was saying that he would be arrested, it is not uncommon for one civilian to aid another so as to help him to avoid arrest during a moment of agitation. Neither of these constitutes "substantial evidence of probative value," so as to push the identification of Miller as an officer "beyond a reasonable doubt." Therefore, given the lack of Miller's identification as an officer, required for a conviction of resisting law enforcement under I.C. 35–44–3–3, we reverse.

■ The trial court withheld judgment indefinitely on the battery charge. In *Robinson v. State* (1977), 172 Ind.App. 205, 359 N.E.2d 924, this Court held in an opinion written by Judge Garrard: "Where the

court deliberately postpones indefinitely the pronouncement of judgment and sentence, the court loses jurisdiction to sentence and upon application the defendant should be discharged." (Citations omitted.) Since this Court has reversed the resisting law enforcement conviction and since the trial court has withheld judgment on the battery charge, the trial court is further instructed to discharge Stack on the battery charge.

Reversed.

GARRARD, P.J., and HOFFMAN, J., concur.