Keith EBERLE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 58A01–1003–CR–105.

Court of Appeals of Indiana.

Jan. 28, 2011.

Transfer Denied April 7, 2011.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Andrew R. Falk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Keith Eberle appeals his convictions, after a jury trial, for class D felony intimidation,[1] class C felony stalking,[2] and two counts of class B misdemeanor harassment.[3]

We affirm and remand with instructions.

### ISSUES

1. Whether the State established that Ohio County was a proper venue for trial.
2. Whether the trial court properly refused Eberle's proposed venue instructions.
3. Whether sufficient evidence supports Eberle's convictions.
4. Whether the trial court's failure to vacate lesser-included offenses that were merged for purposes of sentencing violated Indiana's prohibition against double jeopardy.

### FACTS

V.L. resides in Rising Sun, Ohio County, Indiana. At all times relevant herein, she was the Ohio County jail matron. On September 7, 2008, while she was visiting her sister in Dearborn County, Indiana, she received a picture of an erect penis on her employer-issued cell phone. The attached text message read: "Tara, thanks for the killer head. Call me." (Tr. 185).

The sender's phone number appeared on the display of V.L.'s cell phone. Moments later, her cell phone rang with an incoming call from the same phone number. When V.L. answered, the male caller asked for "Tara." V.L. responded that she was not "Tara," that her name was V., and that the caller had made a mistake. V.L. later testified, "He changed his demeanor instantly and asked me if I liked the picture . . . and he wanted to meet me later and he could show it to me in person." (Tr. 183). V.L. asked the caller to stop calling her and hung up.

In the ensuing minutes, the caller telephoned V.L. "[r]oughly four or five" more times. (Tr. 185). After ignoring multiple calls, V.L. answered her phone and pleaded with the caller to stop calling her. She warned that she would call the police if he persisted. The caller ignored her and stated, "I want you to suck my d* * * and I'm going to stick it up in your wet p* * * *." (Tr. 184). V.L. hung up and called her boyfriend, who is a deputy with the Ohio County Sheriff's Department.

On September 19, 2008, V.L. received a second photograph of an erect penis on her cell phone. The attached text message read, "[H]ere's that picture." (Tr. 189). V.L. reported the incidents to the Rising Sun Police Department and provided the caller's phone number to Detective Norman R. Rimstidt. At approximately 2:00 p.m., Rimstidt called the phone number and left a message

identifying [him]self, . . . [and stating that] the reason why [he] was calling was that the communication[s] that w[ere] being received from that handset or that target telephone number . . . w[ere] unwanted communications, that they needed to stop and [he] also re-

1. Ind.Code § 35–45–2–1.

2. I.C. § 35–45–2–2.

3. I.C. § 35–45–10–5.

quested that [the caller] contact [him] at the published telephone number for [the Rising Sun Police] department.

(Tr. 230). Rising Sun Police Department phone records for September 19, 2008 indicated that "there was contact to the department published telephone number from the target telephone number"; however, Rimstidt never spoke to the caller. (Tr. 231).

Two days later, on September 21, 2008, while V.L. was in Florence, Boone County, Kentucky, she received "[r]oughly five or six" private or caller-ID blocked calls. (Tr. 193). The calls were "one after the other within maybe a five minute period." (Tr. 196). She later testified that the caller "sounded similar to [the] September 7th caller." (Tr. 194). The caller told V.L., "[Y]ou better watch your back; you don't know who you're messing with." (Tr. 195). "Scared," V.L. asked the man to "stop calling my phone," and hung up. (Tr. 195). Approximately one minute later, the man called back and said, "I'm going to f* * * you up, b* * * *." (Tr. 195). Again, V.L. hung up. The man called back and said, "[Y]ou know you want this c* * *, b* * * *; I'm going to ram my d* * * so far up in you." (Tr. 196). V.L. later testified, "And I hung up on that one. I said—I asked him to stop calling my phone. At that point, I was upset, I was scared and that was the last private phone call I got." (Tr. 196). She also testified that she worried that the caller might be watching her.

On September 22, 2008, V.L. reported the September 21 incidents to Detective Rimstidt. Rimstidt obtained an investigative subpoena for the target phone number for the period from September 1–30, 2008. Rimstidt's investigation revealed that the target phone was a Verizon prepaid wireless cell phone purchased by a person named "David Deckard."[4] (Tr. 262). Rimstidt compared the time stamps from V.L.'s phone to those of the target phone. He determined that the lewd pictures, text messages, and unwanted series of calls to V.L.'s cell phone had been "generated by this same target telephone." (Tr. 265). Rimstidt then identified various other phone numbers that the target phone had also contacted using blocked caller-ID. In so doing, Rimstidt reached Melinda Nelson, Eberle's ex-wife. Nelson revealed that Eberle resided in southern Indiana, and provided Eberle's cell phone number to Rimstidt. Eberle's phone number was identical to the target phone number that had contacted V.L. on September 7, 19, and 21.

Subsequently, Rimstidt established contact with Eberle. Eberle agreed to submit to an interview. On November 10, 2008, Rimstidt advised Eberle of his rights before conducting the interview, wherein

[Eberle] stated that he had sent the picture messages. However, he stated that [the pictures] went to the wrong recipient. And then he had also stated that yes, indeed, he did make the phone calls, that they were pranks, that when he was asked to stop, he did and that he had never threatened anyone during those phone conversations.

(Tr. 295–96). During the interview, Eberle also released his cell phone to Rimstidt. Rimstidt later retrieved lewd photographs from Eberle's cell phone that were "consistent" with the lewd photographs that had been sent to V.L. from Eberle's phone. (Tr. 317).

On December 4, 2008, the State charged Eberle with the following offenses: count 1, class D felony intimidation of V.L.; count 2, class A misdemeanor intimidation

---

4. Detective Rimstidt's efforts to locate "David Deckard" proved futile.

of D.S.[5]; count 3, class B misdemeanor harassment of D.S.; count 4, class B misdemeanor harassment of V.L.; and count 5, class B misdemeanor harassment of V.L. On August 6, 2009, the State filed additional counts six and seven—two counts of class C felony stalking of V.L. and D.S., respectively. On August 20, 2008, the trial court conducted hearing on Eberle's motions, wherein Eberle orally moved for a change of venue, which was denied. On August 27, 2009, Eberle moved for severance of counts for trial to reflect only those counts that pertained to V.L. The trial court granted Eberle's motion to sever on August 31, 2009, and renumbered the counts as follows: count 1, class D felony intimidation; count 2, class B misdemeanor harassment; count 3, class B misdemeanor harassment; and count 4, class C felony stalking, all pertaining to V.L.

Eberle's three-day jury trial commenced on September 1, 2009. Before the State presented its case-in-chief, Eberle moved twice for a change of venue, alleging prejudice from V.L.'s relationship with the trial court and prosecutor due to her position as an Ohio County jail matron. The trial court denied the motions. During the State's case-in-chief, V.L. and Rimstidt testified to the foregoing facts. At the close of the State's evidence, Eberle moved for a directed verdict on the basis of venue, which was denied. Subsequently, he tendered the following three proposed instructions regarding venue:

*Proposed Final Instruction # 2:*

The right to be tried in the county in which an offense was committed is a constitutional and statutory right.

Authority—Ind. Const. Art. I Sect. 13; *Baugh v. State,* 801 N.E.2d 629 (Ind.

2004) and *Alkhalidi v. State,* 753 N.E.2d 625, 628 (Ind.2001).

*Proposed Final Instruction # 3:*

Venue is not an element of the offense. Although the State is required to prove venue, it may be established by a preponderance of the evidence and need not be proven beyond a reasonable doubt.

Authority—*Baugh v. State,* 801 N.E.2d 629 (Ind.2004) and *Alkhalidi v. State,* 753 N.E.2d 625, 628 (Ind.2001).

The trial court refused to give Eberle's proposed instructions.

On September 3, 2009, the jury found Eberle guilty as charged. On October 9, 2009, he was sentenced to eight years in the Department of Correction. The trial court concluded that the intimidation and harassment counts were lesser-included offenses of stalking and merged counts 1 (intimidation), 2 (harassment), and 3 (harassment) into count 4 (stalking) for purposes of sentencing; however, it entered judgments of conviction on all counts. On November 13, 2008, Eberle filed a motion to correct error, which motion was denied on February 22, 2010. He now appeals.

### DECISION

Eberle raises the following arguments for our review: (1) that the State failed to establish that venue was proper in Ohio County; (2) that the trial court improperly refused his proposed jury instructions; (3) that the evidence is not sufficient to sustain his convictions; and (4) that the trial court erred in entering judgment of conviction on the lesser-included offenses that were merged into his stalking conviction. We address his contentions in turn below.

---

**5.** The State alleged that D.S. was another victim of Eberle's telephone calls and/or text messages.

### 1. *Propriety of Venue in Ohio County*

Eberle first argues that the State failed to prove that Ohio County was a proper venue for trial. Specifically, he argues that the State did not establish his whereabouts when he committed the underlying offenses and, therefore, "the [only] proper venue[s] in the case would have been Dearborn County, [Indiana] or Kentucky." Eberle's Br. at 10–11. He maintains that as a result of the State's error, he is entitled to "acquittal for double jeopardy purposes." Eberle's Br. at 11. We cannot agree.

We initially note that due to violations of double jeopardy (discussed below), judgment of conviction was properly entered only as to Eberle's conviction for class C felony stalking. Accordingly, our venue analysis centers upon whether venue was proper in Ohio County with regard to that offense.

■ The standard of review for a claim that the evidence was insufficient to prove venue is the same as for other claims of insufficient evidence. *Neff v. State*, 915 N.E.2d 1026, 1032 (Ind.Ct.App.2009), *trans. denied.* We neither weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the conclusion of requisite venue. *Id.*

■ The right to be tried in the county in which an offense was committed is a constitutional and a statutory right. Ind. Const. Art. I, § 13; Ind.Code § 35–32–2–1(a); *Alkhalidi v. State*, 753 N.E.2d 625, 628 (Ind.2001). Venue is not, however, an element of the offense; accordingly, the State may establish venue by a preponderance of the evidence and need not prove it beyond a reasonable doubt. *Alkhalidi*, 753 N.E.2d at 628. Venue is usually determined by the jury because venue typically turns on an issue of fact, *i.e.*, where

certain acts occurred. *Id.* When such is the case, it is appropriate for the court to instruct the jury on venue. *Id.*

Indiana Code section 35–32–2–1(k) provides, as follows:

(k) If an offense:

(1) is committed by use of:

(A) the Internet or another computer network (as defined in IC 35–42–2–3); or

(B) another form of electronic communication; and

(2) occurs outside Indiana and the victim of the offense resides in Indiana at the time of the offense;

the trial may be held in the county where the victim resides at the time of the offense.

I.C. § 35–32–2–1(k).

■ It is undisputed that the alleged offenses were committed by means of electronic communication—namely, transmissions from Eberle's cell phone. The events that gave rise to the class C felony stalking charge occurred on September 21, 2008. V.L. was in Florence, Boone County, Kentucky, when Eberle made "[r]oughly five or six" more calls to V.L.'s cell phone, (tr. 193); he warned V.L. to "watch [he]r back"; threatened to "f* * * [her] up"; and stated, "[Y]ou know you want this c* * *, b* * * * *; I'm going to ram my d* * * so far up in you." (Tr. 195, 196). Indiana Code section 35–32–2–1(k) unequivocally provides that where an offense is committed outside Indiana by use of electronic communication upon an Indiana resident, "trial may be held in the county where the victim resides at the time of the offense." At the time of the offense, V.L. was a resident of Ohio County; thus, venue was proper in Ohio County.

Moreover, with regard to the other charged offenses of harassment and intimi-

dation, Indiana Code section 35–32–2–1(h) provides, in part, that when an offense is "committed at a place which is on or near a common boundary which is shared by two (2) or more counties and it cannot be readily determined where the offense was committed, then the trial may be held in any county sharing the common boundary."

■ We take judicial notice of the following: Ohio and Dearborn counties share a common border in Indiana.[6] Moreover, the Ohio River—which divides Indiana from Kentucky—forms the eastern border of both Ohio and Dearborn counties. Further, Boone County, Kentucky is adjacent to both Ohio and Dearborn counties across the Ohio River.

At trial, the State presented the following evidence: V.L. is an Ohio County resident. She was in Aurora, Indiana (Dearborn County) when she received the first lewd photograph and series of unwanted calls from Eberle on September 7; and she was in Boone County, Kentucky when she received the second lewd photograph and additional unwanted calls from Eberle on September 21, 2008. Eberle's driver's license (State's Exhibit 7) indicates that he resides in Lawrenceburg (Dearborn County), which is located on the banks of the Ohio River.

A reasonable inference may be drawn from the evidence that Eberle made the phone calls from Lawrenceburg, Dearborn County, where he resides. Considering the nature of mobile phone technology, an offense committed over the telephone may reasonably be deemed to have been committed at either the geographic location from which the calls were made or at which the calls were received. Thus,

Eberle's offenses herein may reasonably be deemed to have been committed in either Ohio County or Dearborn County, Indiana, or in Boone County, Kentucky. In either event, pursuant to Indiana code section 35–32–2–1(h), because Lawrenceburg is on the banks of the Ohio River—a common boundary shared by Ohio and Dearborn counties—Eberle's trial could properly "be held in any county sharing the common boundary." Thus, Ohio County was a proper venue for Eberle's trial according to the express language of Indiana's venue statute.

Eberle has not demonstrated that the State failed to present sufficient evidence to establish that Ohio County was a proper venue for trial.[7]

## 2. *Sufficiency of Evidence*

Next, Eberle argues that there was insufficient evidence to support his convictions.

Our standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or judge the credibility of the witnesses, and it lies within the jury's exclusive province to weigh conflicting evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). We will affirm the trial court if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

### a. *Intimidation*
#### i. Prior Lawful Act

Eberle argues that his conviction should be overturned because the State failed to

---

**6.** Ohio County borders Dearborn County to the south.

**7.** We take further judicial notice that the same Circuit Court and Magistrate judges serve both Dearborn and Ohio counties.

prove that he intimidated V.L. on September 21, 2008, by threatening her for failing to answer his phone calls. Specifically, he argues that V.L. did not, in fact, refrain from answering her phone, because she was required to answer it as a condition of her employment.

Indiana Code section 35–45–2–1 provides as follows:

(a) A person who communicates a threat to another person, with the intent:

\* \* \*

(2) that the other person be placed in fear of retaliation for a prior lawful act; \* \* \*

\* \* \*

commits intimidation, a Class A misdemeanor.

I.C. § 35–45–2–1(a)(2). The State's charging information alleged that Eberle threatened to commit physical force of a sexual nature on V.L., "with the intent that [she] be placed in fear of retaliation for a prior lawful act, to-wit: refusing to answer her telephone calls." (App.15). Thus, in order to convict Eberle, the State was required to prove that he communicated a threat to V.L. with the intent that she be placed in fear of retaliation for refusing to answer his calls.

▪ At trial, V.L. testified as follows that on September 7, 2008, she ignored calls from Eberle's phone number:

Q: Okay. From the time that you hung up and you told whoever this caller was from this phone number to stop calling you and they kept calling back, about how much period of time elapsed?

A: Roughly four or five minutes.

Q: Okay. When you didn't answer the phone, did the caller stop calling you or did they keep calling?

A: No, they kept calling.

Q: Did you ever answer the phone again?

A: I finally answered it one last time. (Tr. 183–84). She testified that she asked Eberle to stop calling her and reported his persisting contact to Rimstidt, who called Eberle on September 19, identified himself as a law enforcement officer, and ordered Eberle to cease all contact. V.L. testified further that despite Rimstidt's warning, Eberle telephoned her several times on September 21, and threatened, "[Y]ou better watch your back; you don't know who you're messing with"; "I'm going to f\* \* \* you up, b\* \* \* \*"; and "[Y]ou know you want this c\* \* \*, b\* \* \* \*; I'm going to ram my d\* \* \* so far up in you." (Tr. 195, 196). In addition, Rimstidt testified that Eberle admitted to calling V.L.'s cell phone; and cell phone records positively identified Eberle's cell phone as the source of the explicit pictures and series of unwanted phone calls to V.L.'s cell phone.

Based upon our review of the record, we conclude that the State presented sufficient evidence of probative value from which the jury could have found, beyond a reasonable doubt, that Eberle committed intimidation. Eberle's contention that V.L. did not ignore his calls is merely an invitation that we reweigh the evidence in his favor, which we cannot do. *See Drane*, 867 N.E.2d at 146.

### ii. Felony Enhancement

▪ Eberle argues further that his intimidation offense was improperly elevated to a felony. Specifically, he contends that the legislature could not reasonably have intended his offense to be elevated to a felony where he "did not know V.L. was the jail matron and nothing about her position had any bearing on the crimes for which he was charged." Eberle's Br. at 28. We agree.

The interpretation of a statute is a question of law for the courts and is

reviewed under a de novo standard. The rules of statutory construction require courts to give the words of a statute their plain and ordinary meaning unless the statute otherwise provides definitions, or unless the construction is plainly repugnant to the intent of the legislature. However, if a statute is susceptible to more than one interpretation, it is ambiguous. If a statute is ambiguous, then courts must give effect, and implement the intent of the legislature. In doing so, courts must examine the whole statute and not give too much meaning to any particular word or words in isolation, but should extract the purpose of the legislation and avoid an unjust or absurd result.

*Ind. Bureau of Motor Vehicles v. Orange,* 889 N.E.2d 388, 390 (Ind.Ct.App.2008) (internal citations and quotations omitted).

Indiana Code section 35–45–2–1(b)(1)(B)(i) provides that an intimidation offense is elevated from a class A misdemeanor to a class D felony where "the person to whom the threat [wa]s communicated" is a law enforcement officer. It provides,

(a) A person who communicates a threat to another person, with the intent:

      \*      \*      \*

(2) that the other person be placed in fear of retaliation for a prior lawful act; \* \* \*

      \*      \*      \*

commits intimidation, a Class A misdemeanor.

(b) **However, the offense is a:**

(1) **Class D felony if:**

      \*      \*      \*

(B) **the person to whom the threat is communicated:**

(i) **is a law enforcement officer** . . . .

I.C. § 35–45–2–1 (emphasis added).

In support of his claim that such a requirement should apply, Eberle directs our attention to *Stack v. State,* 534 N.E.2d 253 (Ind.Ct.App.1989). In *Stack,* the defendant witnessed the apprehension of an escaped prisoner by numerous law enforcement officers. The prisoner had suffered a self-inflicted injury during the escape, and when the police did not embrace defendant's suggestion as to the prisoner's medical care to his satisfaction, the defendant expressed his dissatisfaction with the officers' performance to a plain-clothed individual, whom he mistook for a civilian bystander. The "civilian" warned the defendant to exercise caution or risk arrest for interfering in a police investigation. Unaware that the "civilian" was, in fact, a police officer, the defendant began to walk away. The officer reached out and touched the defendant in an attempt to place the defendant under arrest. A fight ensued.

The defendant was subsequently convicted of resisting law enforcement. On appeal, he challenged the sufficiency of the evidence to support his conviction. In reversing the trial court, a panel of this court found that the resisting law enforcement statute had been clarified by caselaw, which required a showing that the person being arrested knew or had reason to know that the person resisted was a police officer. We noted that the plain-clothed officer never identified himself as an officer and did not tell the defendant that he was under arrest. Thus, we concluded that "the evidence [wa]s unequivocal that Stack had no reason to believe that [the individual he resisted] was an officer." *Id.* at 255.

Likewise here, as in *Stack,* Eberle was not aware that V.L. was a law enforcement officer when he committed the instant of-

fenses. It appears from their testimony that neither V.L. nor Rimstidt disclosed the fact to Eberle. The State presented no evidence that Eberle had any prior personal knowledge of V.L., not to mention her employment as a Ohio County jail matron. This lack of evidence prompted defense counsel to move for a directed verdict stating, "There's been no evidence that Eberle had any knowledge whatsoever that [V.L.] was a law enforcement officer." (Tr. 384).

Eberle's reliance upon *Stack* is apt. We have previously opined as follows regarding the policy justification for elevating criminal penalties for offenses against law enforcement officers and other public officials:

> "The purpose ... for providing increased penalties for crimes when committed against a public official, such as a police officer, is to afford a greater degree of protection to persons who might be subjected to special risks because they are performing public duties." "[P]ublic policy requires that law enforcement officials who are subject to the greater threats ... than the ordinary citizen be given additional protection, but only when the increased risks result from actions involving the execution of their official duties."

*Masotto v. State,* 907 N.E.2d 1083, 1085 (Ind.Ct.App.2009) (internal citations omitted). Absent any evidence that Eberle knew that V.L. was a law enforcement officer or intimidated her as she performed her public duties, the application of the felony enhancement was error. We agree with Eberle that our legislature would not have intended, under these circumstances, that his intimidation conviction be elevated to a class D felony.

### b. *Harassment*

Next, Eberle argues that the State failed to prove that he intended to harass V.L. Specifically, he argues that the evidence presented at trial supported a finding that the lewd photographs were intended for a different person.

■ Our Indiana Code defines "harassment" as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35–45–10–2. In order to convict Eberle of harassment, the State was required to prove that he intended to "harass, annoy, or alarm" V.L., and that he made a telephone call or "use[d] a computer network ... or other form of electronic communication" to "transmit an obscene message or indecent or profane words" to V.L. I.C. § 35–45–2–2(a)(4)(B).

As noted above, the record reveals that Eberle admitted to Detective Rimstidt that he had sent the offensive photographs to V.L.; and Eberle's cell phone records confirmed multiple calls to V.L.'s cell phone on September 7 and 21. In addition, V.L. testified that on September 7, she told Eberle that she was not "Tara," that her name was V., and that he had made a mistake. She testified further that Eberle then "asked [her] if [she] liked the picture ... and [stated that] he wanted to meet [her] later and he could show it to [her] in person." (Tr. 183). V.L. testified that although she repeatedly pleaded with Eberle to stop calling her, he subsequently telephoned her "[r]oughly four or five" more times that same day. (Tr. 185). She testified further that after ignoring several calls, she finally answered her phone, and Eberle made lewd sexual remarks to her.

V.L. also testified that on September 19, 2008, she received yet another lewd photograph and contacted Detective Rimstidt. Rimstidt testified that he identified himself

as a law enforcement officer and left a voicemail message on Eberle's phone ordering Eberle to cease telephoning and/or sending lewd images to V.L. V.L. testified further, and Eberle's phone records confirm, that despite the warnings, Eberle again contacted V.L. on September 21. (Tr. 193). She testified that during the calls, which were made in rapid succession within a five-minute period, Eberle called her vulgar names and warned, "[Y]ou better watch your back"; "I'm going to f* * * you up, b* * * *"; and "I'm going to ram my d* * * so far up in you." (Tr. 195, 196). She testified that Eberle's calls made her "upset," "scared," and fearful of the possibility that he might be watching her. (Tr. 196).

The foregoing evidence supports the jury's determination that Eberle intended to harass, annoy or alarm V.L. when he transmitted obscene photographs and made profane and indecent remarks to her over the phone. Thus, we find that the State presented sufficient evidence to convict Eberle of harassment as a class B misdemeanor.

### c. *Stalking*

Eberle argues that the State failed to prove that he stalked V.L. Specifically, he argues that he did not engage in repeated or continuous harassment of V.L.; and that V.L. lacked a legitimate cause for fear.

Indiana Code section 35–45–10–5 provides

(a) A person who stalks another person commits stalking, a Class D felony.

(b) The offense is a Class C felony if at least one (1) of the following applies:

(1) A person:

(A) stalks a victim; and

(B) makes an explicit or an implicit threat with the intent to place the victim in reasonable fear of:

(i) sexual battery (as defined in IC 35–42–4–8). . . .

Indiana Code section 35–45–10–1 defines the term "stalk" as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." "Harassment" is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35–45–10–2. For our purposes here, a defendant commits "sexual battery" when he (or she), with intent to arouse or satisfy his (or her) own sexual desires or the sexual desires of another person, touches another person when that person is compelled to submit to the touching by force or the imminent threat of force. I.C. § 35–42–4–8.

Thus, in order to convict Eberle of class C felony stalking, the State was required to prove that he knowingly or intentionally stalked V.L., and made an explicit or an implicit threat with the intention of placing V.L. in reasonable fear of sexual battery; that his conduct would have caused a reasonable person to feel terrorized, frightened, intimidated, or threatened; and that V.L. was actually placed in fear of sexual battery.

As we have already discussed at length above, the State presented evidence that on September 7 and 19, Eberle sent lewd images and made vulgar statements to V.L. via her cell phone. On September 7, V.L. told Eberle that she wanted no

further contact from him; and on September 19, she reported receiving another lewd image to Detective Rimstidt, who notified Eberle that his lewd communications were unwelcome and must cease immediately. Despite these warnings, on September 21st, Eberle made "[r]oughly five or six" more calls to V.L. (tr. 193), during which he warned her to "watch [he]r back"; threatened to "f* * * [her] up"; and stated, "[Y]ou know you want this c* * *, b* * * *; I'm going to ram my d* * * so far up in you." (Tr. 195, 196). V.L. later testified that she "hung up" feeling "upset," "scared," and fearful that the caller was possibly "watching [her]." (Tr. 196, 204).

The foregoing facts constitute sufficient probative evidence from which a reasonable jury could find Eberle guilty beyond a reasonable doubt of stalking, as a class C felony.

### 3. *Denial of Proposed Venue Instructions*

■■■■ Eberle argues that the trial court improperly refused to give his proposed instructions on venue to the jury. Instructing the jury lies within the sole discretion of the trial court. *Smith v. State*, 777 N.E.2d 32, 34 (Ind.Ct.App.2002). We review a trial court's decision to give or refuse to give an instruction for an abuse of discretion. *Williams v. State*, 891 N.E.2d 621, 630 (Ind.Ct.App.2008). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Prewitt v. State*, 878 N.E.2d 184, 187 (Ind.2007). Even if a trial court abuses its discretion in refusing to give an instruction, such a refusal "is not presumed fatal and will constitute reversible error only when substantial rights have been adversely affected." *Crafton v. State*, 821 N.E.2d 907, 910 (Ind.Ct.App.2005). Before a defendant is

entitled to a reversal, he must affirmatively show that the instructional error prejudiced his substantial rights. *Flake v. State*, 767 N.E.2d 1004, 1006 (Ind.Ct.App. 2002).

■■■■ Venue did not present a genuine issue in the instant case. As noted above, venue is generally an issue to be determined by the jury because venue typically turns on an issue of fact. *Cutter v. State*, 725 N.E.2d 401, 408–09 (Ind.2000). However, "[e]ven when venue turns on issues of fact, ... a trial judge may refuse to instruct the jury on venue if it presents no genuine issue." *Id.* (quoting *United States v. Massa*, 686 F.2d 526, 530 (7th Cir.1982) ("[W]here venue is not in issue, no court has ever held that a venue instruction must be given.")). We have already determined above that as a matter of law, that venue was proper in Ohio or Dearborn County, pursuant to Indiana Code section 35–32–2–1(h); thus, the trial court acted within its sound discretion when it deemed venue to be not in issue and refused to give Eberle's proposed instructions thereon.

■■■■ Moreover, even assuming *arguendo* that the trial court's refusal to give Eberle's proposed instructions was error, Eberle cannot prevail because any error in giving jury instructions is subject to a harmless error analysis. *See Randolph v. State*, 802 N.E.2d 1008, 1011 (Ind.Ct.App. 2004). We have previously held that errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence, and the instruction would not likely have impacted the jury's verdict. *Id.* at 1013. The record here reveals that the State presented substantial evidence—namely, witness testimony and copious phone records—of where the crime was committed and Eberle's guilt; therefore, Eberle's pro-

posed instructions would not have had an impact on the verdict.

Because Eberle has not demonstrated any prejudice to his substantial rights, we conclude that error—if any—from the trial court's refusal to give his proposed instructions was harmless. The trial court did not abuse its discretion in refusing Eberle's proposed instructions.

### 5. Double Jeopardy

■ The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. Art. I, § 14. The Indiana Double Jeopardy Clause prohibits multiple convictions if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind.1999).

■ Eberle argues that the trial court erred in failing to vacate his convictions for class D felony intimidation and two counts of class B misdemeanor harassment after it merged those convictions into his stalking conviction for purposes of sentencing. The State concedes this point. *See* State's Br. at 22. We therefore remand to the trial court with instructions to vacate Eberle's convictions for intimidation [8] and harassment, and affirm in all other respects.

Affirmed and remanded with instructions.

BRADFORD, J., concurs.

BROWN, J., concurs in result with opinion.

8. Eberle's conviction for intimidation was dismissed as violative of Indiana's prohibition against double jeopardy, but would otherwise

BROWN, J., concurring in result.

I concur in the result reached by the majority but would hold that any error in the finding of venue in Ohio County for the harassment and intimidation charges is harmless given that we are remanding with instructions to vacate Eberle's convictions for theses offenses on double jeopardy grounds.

have been reduced from a class D felony to a class A misdemeanor.