FILED
Jun 06 2019, 8:21 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Rory Gallagher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Allen Peacock, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 6, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-2654 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David Hooper, Magistrate <br><br> Trial Court Cause No. <br> 49G12-1707-CM-27237 |

**Darden, Senior Judge.**

# Statement of the Case

Christopher Peacock appeals his conviction by jury of harassment, a Class B misdemeanor.[1] We affirm.

# Issues

Peacock raises three issues, which we restate as:

I. Whether the State presented sufficient evidence to prove that Indiana had jurisdiction over the case.

II. Whether the State presented sufficient evidence to prove that Marion County, Indiana, was the proper venue.

III. Whether the trial court committed fundamental error while instructing the jury.

# Facts and Procedural History

The Indiana Department of Child Services (DCS) opened a case in Marion County involving Peacock and children in his care. Peacock lived in Marion County. DCS assigned Case Manager Narea Okpala to the case in February 2016. Okpala lived in Marion County, and in addition she worked at the DCS Marion County office.

---

[1] Ind. Code § 35-45-2-2 (1996).

[4]     The first time Okpala met with Peacock after being assigned to the case, he gave her two telephone numbers. He informed her that the first number was for his mobile phone, and the second number was for his girlfriend's mobile phone. Okpala saved those telephone numbers in her work mobile phone. In addition, Okpala gave her work mobile phone number to Peacock.

[5]     At a second meeting between Okpala and Peacock, he requested that she contact him using only his girlfriend's mobile phone because he was not using his personal phone any more. Subsequently, Okpala and Peacock communicated several times, via his girlfriend's mobile phone.

[6]     On the morning of July 5, 2017, a hearing was held in the CHINS case, and the CHINS court judge issued a ruling that displeased Peacock. Okpala was not at the hearing.

[7]     Next, Peacock texted Okpala at around 4 p.m. using his girlfriend's mobile phone. He complained about the outcome of the CHINS hearing and accused her of "playing god." Tr. Ex. Vol., State's Ex. 1. Peacock then texted to Okpala the names of her mother, sister, and brother, stating to her that they were "under [his] surveillance" because he knew their "addresses and schedules." *Id.* He also texted to Okpala that he knew where she lived and that he "had a tracking device on [her] car." *Id.* In subsequent texts sent within minutes of the prior texts, Peacock repeatedly referred to Okpala in a derogatory manner, followed by the use of a racist slur directed at her, and stated to her that he might go to Terre Haute to "hang" her mother and sister.

Tr. Ex. Vol., State's Ex. 3. He next texted that he had Okpala's family "on [his] gps" and that she should remember that while "playing god." Tr. Ex. Vol., State's Ex. 4. Peacock then texted Okpala, "I can't wait to hang your family," followed by a long string of additional racial slurs. Tr. Ex. Vol., State's Ex. 5.

[8] Immediately after sending the text messages on July 5, 2017, Peacock left a voicemail on Okpala's work mobile phone. In the voicemail, he accused her of "abusing her power" and again repeatedly referred to her using racial slurs. Tr. Ex. Vol., State's Ex. 7. Peacock further stated in the voicemail that he hated Okpala and would kill her.

[9] Okpala later testified that she received the messages "while [she] was living in Marion County" and was still "working in Marion County" at DCS. Tr. Vol. II, p. 22. She was so terrified that she immediately reported Peacock's communications to law enforcement in Marion County, as well as to her supervisors.

[10] The next day, on July 6, 2017, Peacock met with social worker Shelby Harris at his home. He admitted to Harris that he had sent threatening text messages to Okpala because he "wanted her to lose sleep" and hoped that his threats "would always be on her mind." *Id.* at 29. He voluntarily showed the text messages to Harris. During this discussion, Peacock laughed and appeared to brag about the messages he had sent to Okpala.

[11] Soon thereafter, Peacock's case was transferred to another case manager; however, Okpala remained frightened. As a result of Peacock's threats and

lingering fear experienced by Okpala, she quit her job at DCS and moved out of Marion County. In addition, Okpala advised her family members to be constantly watchful and on guard.

[12] The State charged Peacock with harassment, a Class B misdemeanor, alleging that "all events occurred in Indianapolis, Marion County, Indiana." Appellant's App. Vol. II, p. 12. Peacock requested trial by jury. A jury trial was held on September 13, 2018. Prior to and during the trial, Peacock never raised the issues of jurisdiction and venue or questioned whether the alleged crime occurred in Marion County, Indiana. The jury found Peacock guilty as charged. The trial court imposed a sentence, and this appeal followed.

## Discussion and Decision

### I. Jurisdiction

[13] Peacock argues that territorial jurisdiction is a constitutionally claimed right, and the State failed to prove that he committed his offense in Indiana; and, therefore, he concludes that his conviction must be reversed in the absence of proof of territorial jurisdiction beyond a reasonable doubt.

[14] Before we turn to the merits of Peacock's argument, we note that the State, in response, argues that Peacock has waived this issue for appellate review because he did not challenge territorial jurisdiction at trial in a motion for directed verdict. We acknowledge that some constitutional claims may be procedurally defaulted for appeal purposes if not raised in the trial court. *See Butler v. State*,

724 N.E.2d 600, 604 (Ind. 2000) (Indiana Constitutional claim related to jury instructions was waived for failure to present claim at trial).

[15] In response, Peacock argues that jurisdiction in Indiana cannot be waived, and the issue can virtually be raised at any time. We agree with Peacock that as we stated in *McKinney v. State*, 553 N.E.2d 860, 863 (Ind. Ct. App. 1990), *trans. denied*, territorial jurisdiction is a fact that the State must prove beyond a reasonable doubt because jurisdiction "may not be waived or conferred by consent." As a result, on appeal Peacock may present a claim that the State failed to provide sufficient evidence to prove territorial jurisdiction.

[16] In reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Ortiz v. State*, 766 N.E.2d 370, 374 (Ind. 2002). Rather, we consider only that evidence which supports the verdict and all reasonable inferences drawn therefrom. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. *Id.* Circumstantial evidence need not overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Gaerte v. State*, 808 N.E.2d 164, 166 (Ind. Ct. App. 2004), *trans. denied*.

[17] The territorial jurisdiction of Indiana includes the area within the constitutionally-designated boundaries of the state, as well as portions of the Ohio and Wabash rivers where Indiana exercises concurrent jurisdiction with

bordering states. Ind. Code § 35-41-1-1 (2009). "A person may be convicted under Indiana law of an offense if . . . either the conduct that is an element of the offense, the result that is an element, or both, occur in Indiana . . . ." *Id.*

[18] At the time Peacock committed this offense on July 5, 2017, it is undisputed that both he and Okpala lived in Marion County, Indiana. In addition, Okpala worked for DCS in Marion County. Peacock sent the text messages and the voice mail message to Okpala on the same day that the CHINS court had issued a ruling that apparently was adverse to and displeased him. Within a few hours after the hearing, Peacock began sending the threatening text messages to Okpala's work mobile phone at around 4 p.m., a time during which she reasonably would have been at work. She received all of the messages "while [she] was living in Marion County" and was "working in Marion County." Tr. Vol. II, p. 22. Almost immediately upon receiving Peacock's threatening messages, Okpala reported them to Marion County law enforcement. Peacock met with a social worker the following day at his house in Marion County.

[19] We find that there is sufficient circumstantial evidence from which the jury could have determined, beyond a reasonable doubt, that Peacock sent the messages while in Indiana, and, further, that Okpala received the messages while in Indiana. *See Ortiz*, 766 N.E.2d at 374 (State presented sufficient circumstantial evidence, in the form of the victim's testimony, that the offense occurred in Indiana). Peacock's arguments are a request for this Court to reweigh the evidence, in contravention of our standard of review.

# II. Venue

[20] Peacock next argues that the State failed to present sufficient evidence to establish that venue was proper in Marion County, which is where the State alleged in the charging information that the crime occurred, and is also where he was tried and convicted.

[21] The State argues Peacock has waived this claim for appellate review, and we agree. "A defendant waives error relating to venue when he fails to make an objection at the appropriate time in the trial court." *Harkrader v. State*, 553 N.E.2d 1231, 1234 (Ind. Ct. App. 1990), *trans. denied*. In Peacock's case, he did not challenge venue at trial, such as by filing a motion for directed verdict. His venue claim is waived. *See id.* (Harkrader's claim of insufficient evidence of venue was waived on appeal due to his failure to raise it in trial court).

[22] Waiver notwithstanding, the parties agree that Peacock had a constitutional and statutory right to be tried in the county where the offense was committed. *See* IND. CONST. Art. I, § 13 ("In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed . . . ."); Ind. Code § 35-32-2-1(a) (2005) ("Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law").

[23] The State is required to prove venue, although it is not an element of an offense. *Baugh v. State*, 801 N.E.2d 629, 631 (Ind. 2004). As a result, the State may prove venue by a preponderance of the evidence rather than by proof beyond a

reasonable doubt. *Id.* Circumstantial evidence may be sufficient to establish proper venue. *Evans v. State*, 571 N.E.2d 1231, 1233 (Ind. 1991). We neither weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences drawn therefrom that support the conclusion of requisite venue. *Eberle v. State*, 942 N.E.2d 848, 855 (Ind. Ct. App. 2011), *trans. denied*.

[24] The circumstantial evidence that we have discussed above is sufficient to establish by a preponderance of the evidence that Peacock committed the offense in Marion County. As a result, we find that the State proved venue in this case. *See Eberle*, 942 N.E.2d at 855-56 (State presented sufficient circumstantial evidence of venue to sustain convictions of stalking, harassment and intimidation via telephone calls).

## III. Jury Instructions and Fundamental Error

[25] Lastly, Peacock argues that the trial court erred in failing to instruct the jury on territorial jurisdiction and venue. He concedes that he did not present this issue to the trial court during the court's hearings on jury instructions or at any other time during the trial.

[26] To avoid waiver, Peacock now asserts that the trial court's failure to give and explain jurisdiction and venue in the jury instructions constituted fundamental error. The doctrine of fundamental error is an exception to the general rule requiring a contemporaneous objection to a trial court ruling. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). Fundamental error is a substantial, blatant

violation of due process. *Clay v. State*, 766 N.E.2d 33, 36 (Ind. Ct. App. 2002). To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* The fundamental error exception applies only in egregious circumstances. *Pattison*, 54 N.E.3d at 365 (quotation omitted). When we consider a claim of fundamental error with respect to jury instructions, we look to the instructions as a whole to determine whether they were adequate. *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010).

[27] "[I]f there is no serious evidentiary dispute that the trial court has territorial jurisdiction, then a special instruction on territorial instruction need not be given to the jury." *Ortiz*, 766 N.E.2d at 376. Similarly, "[e]ven when venue turns on issues of fact, . . . a trial judge may refuse to instruct the jury on venue if it presents no genuine issue." *Cutter v. State*, 725 N.E.2d 401, 409 (Ind. 2000).

[28] Without objection, as noted herein, the State's charging information clearly placed Peacock on notice that the criminal offense with which he was charged, was alleged to have been committed in the venue of Marion County, Indiana. During the trial, the State presented sufficient evidence, through witness testimony, that the harassment was committed in Marion County, Indiana. By contrast, Peacock did not raise or contest jurisdiction or venue before or during trial. There was not a scintilla of evidence presented that the offense could have been committed in a different county or state. Under the facts of this case, a failure to instruct the jury on jurisdiction and venue was not a substantial,

blatant violation of Peacock's right to due process and did not render a fair trial impossible. He has failed to establish fundamental error.

## Conclusion

[29] For the reasons stated above, we affirm the judgment of the trial court.

[30] Affirmed.

Vaidik, C.J., and Tavitas, J., concur.