Marshall RANDOLPH, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 45A04–0307–PC–376.

Court of Appeals of Indiana.

Feb. 10, 2004.

Transfer Denied April 12, 2004.

---

Susan K. Carpenter, Public Defender of Indiana, Brian Eisenman, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Marshall Randolph was convicted following a jury trial of murder. He filed a Petition for Post–Conviction Relief which the post-conviction court denied. He now appeals. We affirm.

### Issues

Randolph raises three issues for our review which we consolidate and restate as:

1. Whether the trial court properly instructed the jury regarding self-defense; and

2. Whether Randolph received effective assistance of trial and appellate counsel.

### Facts and Procedural History

Randolph was convicted by a jury of murder and his conviction was affirmed by our supreme court. *Randolph v. State,* 755 N.E.2d 572 (Ind.2001). The facts of the case were outlined as follows:

The essential facts of this tragic and senseless killing are as follows. In the evening hours of August 1, 1998, Randolph approached a group of young men that included Hicks and inquired which one of the group had been "messing with" his sister. The record shows that earlier in the day Marcus Holloway, a member of the group, allegedly made an untoward remark directed at Randolph's sister. After an exchange of words between Holloway and Randolph, the matter seemed to have been closed when Randolph said, "You don't mess with my sister and my sister won't mess with you." However, Randolph continued his belligerence exclaiming, "Next time I come out here. It is not going to be talking." At that point Hicks intervened and asked why Randolph had come into his neighborhood starting trouble and that no one had bothered Randolph's sister. The two then exchanged words, and Randolph produced a handgun pointing it at Hicks. When Hicks raised his hands saying, "Do what you got to do," Randolph fired three times. Hicks died as a result of a gunshot wound to the chest. Randolph was eventually arrested and charged with murder. After a jury trial he was convicted as charged, and the trial court sentenced him to fifty-two years imprisonment.

*Id.* at 574. Randolph sought post-conviction relief alleging that the trial court gave erroneous instructions to the jury and that he received ineffective assistance of both trial and appellate counsel. The post-conviction court denied Randolph's petition for post-conviction relief and this appeal ensued.

### Discussion and Decision

I. Randolph's Petition for Post–Conviction Relief

Under the rules of post-conviction relief, the petitioner must establish

the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1, § 5. A petitioner who has been denied post-conviction relief appeals from a negative judgment and he must convince the appellate court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Hyppolite v. State*, 774 N.E.2d 584, 599 (Ind.Ct.App.2002), *trans. denied.* In other words, we "will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads but to one conclusion and the post-conviction court has reached the opposite conclusion." *Id.* (quoting *Miller v. State*, 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied*, 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000) (citations omitted)).

When reviewing the post-conviction court's decisions, we will not reweigh the evidence nor will we judge the credibility of the witnesses. *Lineberry v. State*, 747 N.E.2d 1151, 1154 (Ind.Ct.App.2001). Rather, we consider only the evidence that supports the decision of the post-conviction court together with any reasonable inferences drawn therefrom. *Dickenson v. State*, 732 N.E.2d 238, 241 (Ind.Ct.App. 2000). Also, we accept the post-conviction court's findings of fact unless clearly erroneous. *Dewitt v. State*, 755 N.E.2d 167, 170 (Ind.2001).

## II. Jury Instructions

### A. Standard of Review

Instruction of the jury is within the discretion of the trial court and is reviewed only for an abuse of discretion. *Bayes v. State*, 791 N.E.2d 263, 264 (Ind. Ct.App.2003), *trans. denied.* This well-settled standard by which we review challenges to jury instructions affords great deference to the trial court. *Id.* Further, we note that any error in giving jury in-structions is subject to a harmless error analysis. *Id.*

### B. Jury Instructions on Self–Defense

The trial court gave the following instructions regarding self-defense to the jury:

#### FINAL INSTRUCTION NUMBER 13

The defense of self-defense is defined by law in Indiana as follows: A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the eminent [sic] use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself by reasonable means necessary. *However, a person is not justified in using force if: He is committing or is escaping after, the commission of a crime;* he provokes unlawful action by another person, with intent to cause bodily injury to the other person; or he has entered into combat with another person or is the initial aggressor, unless he withdraws from that encounter and communicates to the other person his intent to do so or and [sic] the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of disproving the defense of self-defense beyond a reasonable doubt. Before you may find the defendant guilty of the crime charged, or a lesser offense, you must find beyond a reasonable doubt

that the defendant was not acting in self-defense.

FINAL INSTRUCTION NUMBER 14

It is well settled that a defendant need only raise the issue of self-defense so that a reasonable doubt exists. The State then carries the burden of negating the presence of one or more of the necessary elements of self-defense:

1. *that the defendant was without fault;*

2. was in a place where he had a right to be in relation to his alleged assailant; or,

3. acted in reasonable fear of death or great bodily harm.

The questions concerning the existence of the eminent [sic] use of unlawful force, the necessity or apparent necessity of using force, as well as the amount of force necessary to repel an attack, can be determined only from the standpoint of the defendant at the time and under all existing circumstances. In the exercise of self-defense, the defendant ordinarily is required to act immediately, without time to deliberate and investigate. In such circumstances, the danger which exists only in appearance is to him as real and eminent [sic] as if it were actual.

The important inquiry is: Was the danger actual to the defendant's comprehension? It is not whether an injury was actually intended by the assailant but whether it presented a danger from the defendant's point of view.

Appellant's Appendix at 77–80 (emphasis added). Randolph contends that Instruction number thirteen was improper because an individual who is in the process of committing a crime is not absolutely precluded from claiming self-defense. He contends that evidence was presented that he did not have a license for the gun he was carrying. Thus, he argues that the jury could have been led to believe that, because he was committing a crime by carrying a weapon for which he did not have a license, he was not entitled to claim self-defense. Additionally, he argues that Instruction number fourteen was improper because it informed the jury that a person who is claiming self-defense must have acted without fault. Randolph argues that this is an incorrect statement of the law.

■■■ We note first that Randolph has waived his argument to the jury instructions by failing to object at trial and by failing to tender a competing set of instructions. *Franklin v. State,* 715 N.E.2d 1237, 1241 (Ind.1999). Randolph, however, argues that the instructions constitute fundamental error. However, this claim is not available in post-conviction proceedings because the issue was available to Randolph on direct appeal. The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Lockhart v. State,* 632 N.E.2d 374, 375 (Ind.Ct.App.1994), *trans. denied.* Issues available, but not raised, at trial or on direct appeal are waived for post-conviction proceedings. *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind.2001), *cert. denied,* 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002). Additionally, our supreme court has held that freestanding allegations of fundamental error are not available in post-conviction proceedings. *Sanders v. State,* 765 N.E.2d 591, 592 (Ind. 2002) ("The fundamental error exception to the contemporaneous objection rule applies to direct appeals. In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demon-

strably unavailable at the time of trial or direct appeal."). Thus, Randolph's fundamental error argument is not available in post-conviction proceedings. Therefore, Randolph has waived this argument. However, we still address the issue in terms of the effectiveness of his trial and appellate counsel.

## III. Ineffective Assistance of Counsel

### A. Standard of Review

■ To prevail on a claim of ineffective assistance of trial counsel, Randolph must show that his counsel's performance fell below an objective standard of reasonableness as determined by prevailing norms, and that the lack of reasonable representation prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hyppolite v. State,* 774 N.E.2d 584, 601–02 (Ind.Ct.App.2002), *trans. denied.* Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord that decision deference. *Conner v. State,* 711 N.E.2d 1238, 1244 (Ind.1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000). A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

■ The standard for reviewing claims of ineffective assistance of appellate counsel is the same as the standard for reviewing assistance of trial counsel. *Walker v. State,* 779 N.E.2d 1158, 1162 n. 1 (Ind.Ct. App.2002), *trans. denied.* To prevail on a claim of ineffective assistance of counsel, Randolph must show that his counsel's performance fell below an objective standard of reasonableness as determined by prevailing norms, and that the lack of rea-

sonable representation prejudiced him. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Hyppolite,* 774 N.E.2d at 601–02.

### B. Randolph's Claims of Ineffective Assistance of Trial Counsel

Randolph claims that his trial counsel was ineffective for not objecting to the self-defense instructions given by the trial court. He also claims that his trial counsel was ineffective for not tendering correct instructions setting out the necessity of a causal connection between the crime committed and the act of self-defense.

Prejudice exists when a petitioner shows "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Although we held above that Randolph's post-conviction challenge to the instructions was waived, we must still examine whether his counsel was effective.

■ The State contends that any error in the instructions given was harmless. We agree. Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the instruction would not likely have impacted the jury's verdict. *Crawford v. State,* 550 N.E.2d 759, 762 (Ind.1990). An instruction error will result in reversal when the reviewing court "cannot say with complete confidence" that a reasonable jury would have rendered a guilty verdict had the instruction not been given. *Dill v. State,* 741 N.E.2d 1230, 1233 (Ind.2001) (citing *White v. State,* 675 N.E.2d 345, 349 (Ind.Ct.App.1996), *trans. denied* ).

Our supreme court has held that the giving of an instruction similar to the in-

structions we are considering here was not erroneous. In *Mayes v. State*, 744 N.E.2d 390 (Ind.2001), the trial court gave an instruction on self-defense which stated that a person is not justified in using force— even for self-defense—if he is committing, or is escaping after the commission of, a crime. *Id.* at 392. Mayes conceded that he possessed an unlicensed gun at the time he shot his girlfriend and admitted that doing so was a crime. Thus, Mayes argued that the jury could have believed that self-defense was unavailable to Mayes. Our supreme court agreed that in some instances a contemporaneous crime may not negate a claim of self-defense. *Id.* at 393. However, the court stated that such a literal application of the statute would nullify claims of self-defense in a variety of circumstances and produce absurd results. *Id.*[1]

Our supreme court held that because a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant of the defense of self-defense. *Id.* at 394. Rather, there must be an immediate causal connection between the crime and the confrontation. *Id.* In other words, the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred. *Id.* The court then turned to the question of whether there was evidence demonstrating that but for Mayes's possession of an unlicensed handgun, the confrontation resulting in his girlfriend's death would not have occurred. *Id.* Determining that this was ultimately a question for the jury and that the jury returned a guilty verdict, the court stated

that the trial court's instruction was not erroneous. *Id.* at 394–95.

 The case at hand is very similar to *Mayes*. Here, Randolph is arguing that, because he was in possession of an unlicensed handgun, the jury could have believed that the claim of self-defense was unavailable to him. He makes a similar argument by saying that, through Instruction number fourteen, the jury could have believed that the claim of self-defense was unavailable to him because he was not without fault. However, following the holding of *Mayes*, we do not find Randolph's argument convincing.

As our supreme court did in *Mayes*, we turn to the question of whether there was evidence demonstrating that but for Randolph's possession of an unlicensed handgun, the confrontation resulting in Hicks's death would not have occurred. Our supreme court considered the evidence in Randolph's direct appeal:

> One of the State's key witnesses, Marcus Holloway, testified that Hicks raised his hands when Randolph pointed his weapon. In turn, the only evidence supporting a claim of self-defense was Randolph's own testimony. Further, firing multiple shots undercuts a claim of self-defense. Three eyewitnesses testified that Randolph fired multiple shots at Hicks. The jury was free to disbelieve Randolph's self-serving testimony, which it apparently did.

*Randolph*, 755 N.E.2d at 576. The fact that Randolph did not have a license to possess the weapon would seem to have no bearing on its use in Hicks's death. On the other hand, the jury could have concluded that but for Randolph's possession

---

1. As an example, the court stated that, had Mayes shot his girlfriend the minute before his handgun license expired, he would have been able to assert a claim of self-defense, but, had he shot her a minute later, the claim

would have been unavailable to him. The court noted that this would not seem to be the intent of the legislation. *Mayes*, 744 N.E.2d at 394.

of the unlicensed handgun, Hicks would still be alive because Randolph's unlicensed handgun was required, by law, to be kept at his dwelling, on his property, or at his fixed place of business. *See* Ind. Code § 35–47–2–1. Ultimately, it is left to the jury, the fact-finder in this case, to determine whether there is an immediate causal connection between Randolph's possession of an unlicensed firearm and Hicks's death. This is not an issue that can be resolved by this court as a matter of law. *See Mayes*, 744 N.E.2d at 394.

Additionally, we note that Randolph is not entitled to relief on this claim for an additional reason. As noted by our supreme court in Randolph's direct appeal, three eyewitnesses testified that Randolph fired multiple shots at Hicks. Firing multiple shots undercuts a claim of self-defense. *Id.* at 395 n. 2. Thus, there was overwhelming evidence before the jury that Randolph's claim of self-defense was without merit notwithstanding the contemporaneous crime language contained in the instruction. *See id.* Because any error in the jury instructions was harmless, we cannot now say that Randolph's trial counsel was ineffective.

### C. Randolph's Claims of Ineffective Assistance of Appellate Counsel

Randolph argues that his appellate counsel was ineffective for failing to raise the issue of improper jury instructions. Again, Randolph has not demonstrated to this court that the outcome of his trial would have been different had his appellate counsel raised the issue. First, we held above that the trial court's instructions were not grounds for reversal. Second, there was overwhelming evidence of guilt so as to rebut any self-defense claim. Therefore, we cannot say that Randolph's appellate counsel was ineffective.

### *Conclusion*

Any errors in the jury instructions on self-defense were harmless. Additionally, Randolph's trial and appellate counsel were not ineffective. Therefore, the denial of Randolph's Petition for Post–Conviction Relief is affirmed.

Affirmed.

BROOK, C.J., and SULLIVAN, J., concur.