**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 08 2013, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHRISTOPHER LONG,  )
   )
   Appellant-Defendant,  )
   )
   vs.  )  No. 71A03-1211-CR-480
   )
STATE OF INDIANA,  )
   )
   Appellee-Plaintiff.  )

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1202-PC-8
71D02-1011-FB-162

**July 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Christopher Long appeals the post-conviction court's denial of his petition for post-conviction relief. Long presents two restated issues on appeal: 1) whether the enforceability of plea agreement provisions providing for a waiver of the right to appeal should be revisited, and 2) whether Long was denied the effective assistance of his trial counsel. Concluding that plea agreement provisions providing for a waiver of the right to appeal are enforceable, and that Long was not denied the effective assistance of his trial counsel, we affirm.

## Facts and Procedural History

On November 20, 2010, police brought Long to a police station to question him regarding allegations of inappropriate behavior the night before involving two fifteen year old girls, P.H., his girlfriend's daughter, and A.B., P.H.'s friend. Long was Mirandized and waived his right to counsel, and initially denied having any sexual interactions with the girls. The police detectives who were questioning Long, Detective Gobel and Detective Moniz, asked if he would be willing to submit to a buccal swab to obtain DNA, and Long agreed. Detective Gobel left the room to get a buccal swab kit, and Detective Moniz continued questioning Long. Detective Gobel returned with the buccal swab kit, explained to Long that this was "the same thing as Miranda," and read Long his rights regarding submitting to a sample. Brief of Appellant at 6. Detective Gobel then asked Long if he was still willing to consent to the swab. Long replied, "No I won't. I'll talk to my lawyer," at which point Detective Gobel packed up the kit and left the room. Brief of Appellee at 5. Long turned back to Detective Moniz who continued

questioning Long. Soon thereafter, Long admitted to having had sexual contact with P.H. and A.B., and Long was placed under arrest.

On November 23, 2010, the State charged Long with five counts of sexual misconduct with a minor, all Class B felonies. On December 6, 2010, Detective Moniz obtained a search warrant to search Long's cell phone. The execution of the warrant revealed photographs of A.B. that were "sexual in nature," and were taken on the date of the alleged offenses. Br. of Appellant at 7. The only copy that could later be produced of the affidavit supporting the search warrant was signed by a notary, but was not signed by Detective Moniz.

On April 18, 2011, Long accepted a plea agreement in which he agreed to plead guilty to all five charges. The agreement provided that sentences for certain of the counts were to run concurrently; that there would be a cap of thirty years on the total sentence imposed and a cap of twenty years on the executed portion, but that otherwise the parties could argue the sentence to be imposed; that the State would refrain from filing further charges based on the results of the search warrant of Long's phone; and that Long would be waiving his right to an appeal as long as he was sentenced within the terms of the agreement. The court conducted a plea colloquy with Long that day, established a factual basis for the plea, and then took the matter under advisement and scheduled sentencing for June 15, 2011.

On June 15, 2011, Long filed a motion to withdraw his plea of guilty and his attorney filed a motion to withdraw his appearance. On June 22, 2011, Long obtained new counsel, and on July 12, 2011, counsel filed an appearance and a motion to suppress Long's statements to the detectives from November 20, 2010. A hearing on the motions

was held on July 26, 2011, and the court denied Long's motion to withdraw his guilty plea. Motions for interlocutory appeal were denied, and Long was sentenced on September 14, 2011, to an aggregate sentence of sixteen years.

Long filed a notice of appeal in October 2011, and then in January 2012, filed a motion to remand the case for post-conviction proceedings and the motion was granted.[1] Long filed for post-conviction relief and his petition was denied, and this appeal followed. Additional facts will be supplied as necessary.

<u>Discussion and Decision</u>

I. Waiver of Right to Appeal

Long first argues that the rule allowing plea agreements to contain waivers of the right to appeal should be revisited. We note at the outset that it was our supreme court that held that such provisions are enforceable. <u>See</u> <u>Creech v. State</u>, 887 N.E.2d 73, 75 (Ind. 2008). Long argues, in essence, that <u>Creech</u> was wrongly decided, and for general policy reasons should be revisited. It is not within the province of this court to reconsider decisions of our supreme court. <u>Horn v. Hendrickson</u>, 824 N.E.2d 690, 694 (Ind. Ct. App. 2005). As we stated in <u>Horn</u>, a request that we reconsider a holding of our supreme court is inappropriate. <u>Id.</u> at 695. While we are authorized to criticize existing law, and we may even ask the supreme court to reconsider its earlier opinions, <u>id.</u> at 694-95, we do not do so lightly. Long gives us no reason to do so here.

---

[1] Long's petition for post-conviction proceedings was filed in accordance with the <u>Davis/Hatton</u> procedure. <u>See,</u> <u>e.g.,</u> <u>Slusher v. State</u>, 823 N.E.2d 1219, 1222 (Ind. Ct. App. 2005) ("[W]here it is necessary on appeal to develop an additional evidentiary record to evaluate the reasons for trial counsel's error, the proper procedure is to request that the appeal be suspended or terminated so that a more thorough record may be compiled through the pursuit of post-conviction proceedings. This procedure for developing a record for appeal is more commonly known as the <u>Davis/Hatton</u> procedure." (citations omitted)).

Our supreme court in Creech discussed some of the benefits that can be gained, both by the defendant and by society, when waivers of appellate rights are allowed. Creech, 887 N.E.2d at 75. The court also noted, however, that such a waiver does not entirely foreclose the possibility of appellate review. Despite having waived his right to an appeal, a defendant may have his conviction set aside in a post-conviction proceeding if he can establish that his plea was coerced or unintelligent. Id. Waivers of the right to seek post-conviction relief are unenforceable. Id. at 75-76. And while a defendant may agree to an illegal sentence and that sentence will be enforced, in the case of an open plea agreement, in which the sentence is left to the discretion of the court, the defendant may appeal the sentence if he is not sentenced in accordance with the law, even if the plea included a waiver of the right to appeal. Crider v. State, 984 N.E.2d 618, 625 (Ind. 2013).

Long points to no issues in his case that are open to review despite the waiver in his plea agreement—e.g. he does not argue that his plea was involuntary,[2] that he did not understand what he was waiving,[3] or that he was sentenced illegally or contrary to his plea agreement. Long also points to no issue that falls outside of these allowed challenges, but that might be a reason for us to suggest that our supreme court reconsider

---

[2] Misadvice from his trial counsel regarding the plea offer, discussed below, would be relevant to the voluntariness of Long's guilty plea. While this is an argument that can be made despite a waiver of the right to appeal, neither Long nor the State makes a cogent argument as to the voluntariness of his plea. To the extent Long argues that his plea was involuntary, that argument is waived.

[3] Long does argue, unconvincingly, that a waiver of the right to appeal can never be knowing, because the defendant does not know the terms of his sentence when he accepts the plea agreement. Long analogizes to the waiver of the right to a jury trial, arguing that for that waiver, the defendant knows what he is giving up: the right to a jury trial. We see no difference here. In the case of a jury trial, the defendant knows he is giving up that right without knowing which way the jury will decide. In the case of a waiver of the right to appeal, the defendant knows he is giving up the right to appeal, without knowing the exact sentence (although in some cases the exact sentence may in fact be delineated within the plea agreement). In this case, Long knew the upper limit of the possible sentence when he accepted the plea agreement; the sentence imposed was below that cap.

Creech. That is, he does not point to a consideration that the court may have overlooked when deciding Creech and which has now become an issue in his particular case. In essence, he appears to have buyer's remorse and simply wants the ability to appeal his sentence. He bargained otherwise, and we will not now consider whether his sentence, which was within the limit imposed by his plea agreement, was inappropriate in light of his character and the nature of his offense.

## II. Ineffective Assistance of Trial Counsel

### A. Standard of Review

To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Thacker v. State, 715 N.E.2d 1281, 1284 (Ind. Ct. App. 1999), trans. denied. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, which is error that leaves us with a definite and firm conviction that a mistake has been made. Benefield v. State, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. Id. We examine only the probative evidence and reasonable inferences that support the post-conviction court's determination and we do not reweigh the evidence or judge the credibility of the witnesses. Conner v. State, 711 N.E.2d 1238, 1245 (Ind. 1999), cert. denied, 531 U.S. 829 (2000).

We review claims of ineffective assistance of counsel under the two prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Bieghler v. State, 690 N.E.2d 188, 192 (Ind. 1997), cert. denied, 525 U.S. 1021 (1998). To prevail on a claim of

6

ineffective assistance of counsel, the petitioner must show that his counsel's performance was deficient and that the lack of reasonable representation prejudiced him. Randolph v. State, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), trans. denied. To satisfy the first prong, the petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). To show prejudice, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Pruitt v. State, 903 N.E.2d 899, 906 (Ind. 2009).

Under this standard, judicial scrutiny of counsel's performance must be highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Bieghler, 690 N.E.2d at 192 (citing Strickland, 466 U.S. at 689). Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord that decision deference. Randolph, 802 N.E.2d at 1013. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. Id.

In a case such as this one, where the petitioner pleaded guilty, the two prongs remain, but our supreme court has outlined what is required to show prejudice when there was no trial. In all cases, the petitioner must demonstrate "a reasonable probability that the hypothetical reasonable defendant would not have pled guilty and elected to go to trial if properly advised." Segura v. State, 749 N.E.2d 496, 509 (Ind. 2001) (Sullivan, J.,

7

concurring in result). The petitioner must do more than simply allege that a plea would not have been entered. Id. at 507. Where the alleged error is one that would have affected a defense or is related to a failure to mitigate a penalty, the petitioner must show that there would have been a reasonable probability of success at trial. Id. at 503, 507. Where the alleged error is counsel's omission or misdescription of penal consequences that is relevant to both a plea and a conviction at trial, however, the bar is somewhat lower. In those cases, the petitioner must allege "'special circumstances' or . . . 'objective facts' supporting the conclusion that the decision to plead guilty was driven by the erroneous advice." Id. at 507 (citations omitted).

Finally, we note that the two prongs of the Strickland test are separate and independent inquiries. Therefore, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we may determine the prejudice prong first without inquiring into whether counsel's performance was adequate. Thacker, 715 N.E.2d at 1284.

## B. Long's Trial Counsel

Long argues that there are several grounds for finding his trial counsel ineffective. Long first contends that his counsel was ineffective for failing to file motions to suppress both his confession while in police custody, as well as allegedly incriminating photos that were found on his cell phone. Long also contends that his trial counsel was ineffective for failing to properly advise him regarding the plea agreement he was offered and ultimately agreed to.

## 1. Long's Confession

Regarding Long's admissions to police, we note that there is disagreement between Long and the State as to whether his statement that he would talk to his lawyer was a general and unequivocal request for counsel such that any further questioning by detectives violated his Miranda rights, or whether instead it was directed only at Detective Gobel's request for a buccal sample and was not a withdrawal of his earlier waiver of his right to counsel as far as the interview was concerned. While our review of the recorded interview lends support to the latter interpretation, we will assume for the sake of argument that Long withdrew his earlier wavier of the right to counsel, and a motion to suppress his confession would have been granted.

Nonetheless, there are two reasons why we conclude that Long has failed to demonstrate that his counsel was ineffective for failing to file a motion to suppress his confession. The first is that the filing of a motion to suppress is a strategy decision and does not itself indicate ineffective assistance of counsel. Glotzbach v. State, 783 N.E.2d 1221, 1225 (Ind. Ct. App. 2003). A motion to suppress is a preliminary decision, and even without it, counsel may still object at trial. The second reason is that Long has failed to carry his burden as delineated by Segura. Long's entire argument seems to be that the State would not have been able to prove that Long's confession was voluntary, and so the motion to suppress would have been granted. Long does not discuss, however, his chances of success at trial even without the confession. It appears that the victims were prepared to testify against him, and so while the confession would likely have been helpful, it was not the only evidence against him. The post-conviction court assumed that the testimony of the victims would have been consistent with the facts alleged in the

probable cause affidavit, and that the testimony, unless controverted, would have been sufficient to convict Long of the charged crimes. We cannot say that there was clear error in the post-conviction court's determination that Long did not demonstrate a reasonable probability of success at trial, had his counsel filed a motion to suppress.

## 2. Photos on Long's Phone

Long also argues that his counsel was ineffective for failing to file a motion to suppress photos retrieved from his phone. The State acknowledges that because the probable cause affidavit supporting the warrant was unsigned, the warrant was invalid. Therefore, it seems likely that any motion to suppress would have been granted. However, the State argues that those photos "had nothing to do with the prosecution of this case." Br. of Appellee at 14. Long does not indicate how the photos would have supported the current charges, other than to state that they were "sexual in nature." Br. of Appellant at 47. As far as the motion to suppress, again, it is a preliminary decision and failure to file a motion to suppress does not inherently indicate ineffective assistance of counsel. And, as with the confession above, Long here does not show a reasonable probability of success at trial even without the photos, as it appears that the State did not plan to use the photos for the charges to which Long pleaded guilty, and there was additional evidence to be used against him that, if believed, would have supported a conviction.

However, the invalid warrant is somewhat concerning because the photos were referenced in the plea agreement. The unsigned affidavit for the warrant indicates that the photos were of interest for possible child pornography charges, and one part of the plea agreement was a promise by the State not to file further charges against Long based

10

on the results of the search warrant. That raises the concern that the State's pledge to refrain from filing additional charges was a factor that induced Long to agree to the plea offer, therefore bargaining for what was in essence an empty promise, given that the photos were not obtained with a valid search warrant. However, Long did not testify at the post-conviction relief hearing, and so we have no way of knowing how much weight he may have given to this aspect of the plea offer, and how much, if at all, it contributed to his decision to accept the offer. There were other benefits attached to the plea, such as the twenty year cap on the executed portion of the sentence, and we have no way of knowing how much weight Long gave to each possible benefit. Therefore, he has failed to carry his burden.

### 3. Advice Regarding Plea Offer

Long also claims that his counsel provided ineffective assistance by failing to properly advise him as to the benefits or disadvantages to accepting the plea offer, specifically that his counsel did not inform him of the statutory limits on consecutive sentences.[4] However, neither Long nor his attorney testified at the post-conviction relief hearing, and so the record is bare as to what advice Long did receive, and how that influenced his thought process in deciding to accept the plea offer. There is therefore nothing in the record suggesting that his counsel provided him with ineffective assistance. Absent counsel's testimony at the post-conviction hearing, the post-conviction court may infer that counsel would not have corroborated the petitioner's

---

[4] Each of the charges against Long was a Class B felony, and therefore carried a possible sentence of between six and twenty years. Ind. Code § 35-50-2-5. However, as long as his offenses were not crimes of violence and arose out of a single episode of criminal conduct, restrictions which Long claims apply and which we do not analyze here, his total sentence would have been capped at thirty years (the advisory sentence for a Class A felony). Ind. Code § 35-50-1-2(c); see also Ind. Code § 35-50-2-4 (Class A felony sentence range).

11

allegations of ineffective assistance of counsel. Lockert v. State, 627 N.E.2d 1350, 1353 (Ind. Ct. App. 1994).

We do take this opportunity to address one of Long's specific complaints. Long says the only benefit was the twenty year cap on the executed portion of his sentence, but implies that this was no benefit at all because "it is unlikely that the sentencing court would have imposed any more than twenty years executed." Br. of Appellant at 53. However, Long provides no support for this conclusory statement, and we cannot agree that there is, on the face of the plea agreement, no possible benefit that would have induced Long to reasonably decide to agree to the offer. Given that there were benefits to the plea agreement, and without a record indicating how Long was counseled or what information swayed him to accept the plea, he has failed to allege objective facts supporting a conclusion that his decision to plead guilty was driven by erroneous advice from his counsel, and so we cannot conclude that he was provided with ineffective assistance of his trial counsel.

## Conclusion

Concluding that Long's waiver of the right to appeal was enforceable, and that he was not denied the effective assistance of his trial counsel, we affirm.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.