## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 05 2016, 8:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Joel C. Wieneke<br>Plainfield, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Karl M Scharnberg<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keith Hoglund,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Respondent.* | February 5, 2016<br><br>Court of Appeals Case No.<br>90A02-1503-PC-182<br><br>Appeal from the Wells Circuit Court<br><br>The Honorable Jeffrey Todd, Special Judge<br><br>Cause No. 90C01-1209-PC-6 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Petitioner, Keith Hoglund (Hoglund) appeals the post-conviction court's denial of his petition for post-conviction relief.

[2] We affirm.

## ISSUE

[3] Hoglund raises one issue on appeal, which we restate as: Whether Hoglund's trial counsel provided effective assistance.

## FACTS AND PROCEDURAL HISTORY

[4] The facts, as set forth in Hoglund's direct appeal, are as follows:

> Hoglund and Teresa Mallot (Mallot) were married in June 1998. At that time, Mallot was the mother of a four-year-old son from a prior relationship. Two daughters were born to the marriage, A.H. in 1998 and a sister in 2001. In June 2002[,] the family moved from Fort Wayne to a home in Wells County. A.H. was four years old at the time. When A.H. was about five years old, she told Mallot about an incident in which Hoglund had taken a shower with her. An upset Mallot confronted Hoglund; he denied the allegation and Mallot at first believed him. In February 2006[,] a tearful eight-year-old A.H. again told Mallot about possible sexual abuse. This time Mallot reported the incident to a detective with the Wells County Sheriff's department. The detective questioned A.H. who told him, among other things, that Hoglund "put stuff on his penis and ha[d] her lick it off." Hoglund was arrested an on May 4, 2006, he was charged with two [C]ounts of child molesting as Class A felonies. At trial, then twelve-year-old A.H. testified that Hoglund first began molesting her when she was four years old.

Hoglund would cause her to fellate him approximately two or three times per week. And this lasted until after A.H.'s seventh birthday. Hoglund would rub flavored substances onto his penis and occasionally ejaculate into A.H.'s mouth. Hoglund also showed A.H. a pornographic movie depicting oral sex, told her that her mother viewed her with disgust and cared more for her siblings than her, promised to give her money and toys, and told her that she would be "covered in black and blue" and that he would go to jail if she told anyone. After A.H. told Hoglund that she no longer wanted to fellate him, she asked him if he would ever force her younger sister to fellate him, and Hoglund responded, "I don't know, maybe."

The State called as expert witnesses pediatrician Carol Butler, clinical psychologist Amanda Mayle, and mental health counselor Christine Shestak. Each witness had treated or counseled A.H. in varying degrees of specificity, each witness essentially testified that A.H. was "not prone to exaggerate or fantasize" concerning sexual matters.

They jury found Hoglund guilty on both [C]ounts of child molesting as Class A felonies. Apparently due to double jeopardy concerns the trial court sentenced Hoglund to a term of fifty years on Count I only. Hoglund appealed contending the testimony of the expert witnesses constituted impermissible vouching evidence. He also argued that based on his character and the nature of the offense a fifty-year sentence was inappropriate. In a divided opinion, the Court of Appeals rejected both claims and affirmed the trial court's judgment.

*Hoglund v. State*, 962 N.E.2d 1230, 1232 (Ind. 2012) (internal references and footnote omitted).

[5] Our supreme court granted transfer. In its opinion, the court reaffirmed its adherence to the Indiana Rules of Evidence with respect to the testimony of child victims of abuse and held that "testimony concerning whether an alleged

child victim 'is not prone to exaggerate or fantasize about sexual matters,' is an indirect but nonetheless functional equivalent of saying the child is 'telling the truth.' It is this aspect of *Lawrence* that we today expressly overrule as being inconsistent with the mandate of Rule 704(b) which specifically prohibits witnesses from testifying as to whether another witness 'testified truthfully.'" *Id*. at 1236 (citing *Lawrence v. State*, 464 N.E.2d 923, 925 (Ind. 1984)). In light of this holding, our supreme court found that the vouching testimony of the three expert witnesses had been erroneously admitted, but the mistake remained harmless as there existed substantial evidence of Hoglund's guilt. *Id*. at 1238.

On September 17, 2012, Hoglund filed his petition for post-conviction relief, which was amended on March 18, 2014, and argued ineffective assistance of trial and appellate counsel. A bifurcated evidentiary hearing was conducted on November 25 and December 19, 2014. On March 5, 2015, the post-conviction court denied Hoglund's petition for relief.

Hoglund now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

On appeal, Hoglund contends that only his trial counsel rendered ineffective assistance. It is generally accepted that the petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. On review, we

will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied*), *reh'g denied, cert. denied*, 534 U.S. 830 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Failure to satisfy either prong will cause the claim to fail. *Id.*

Hoglund's argument focuses on his trial counsel's performance during the trial testimony of the State's three expert witnesses. Specifically, Hoglund claims that trial counsel's preparation was lacking as he failed to properly cross-examine one expert on research and clinical experiences. He also maintains that his counsel not only failed to object to the vouching testimony of the State's expert witnesses but also failed to request a mistrial because of it. Lastly, Hoglund claims that trial counsel failed to properly object to A.H.'s hearsay statements admitted through the testimony of two State expert witnesses.

## I. *Inadequate Trial Preparation.*

Turning to Hoglund's claim of inadequate trial preparation, we note that it is well established that "[c]ounsel is afforded considerable discretion in choosing strategy and tactics and we will accord that decision deference." *Randolph v. State*, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), *trans. denied*. "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

Hoglund's counsel was the third attorney to represent him before the trial court and also brought the case to trial. Trial counsel testified at the post-conviction hearing that his primary practice area is criminal defense and he had litigated

approximately nineteen or twenty jury trials. He stated that he had reviewed the depositions and discovery compiled by his two predecessors. By the time trial commenced, he felt comfortable that he knew what the expert witnesses would testify to. Hoglund argues that counsel's lack of independent research and research into medical treatises and publications to rebut the expert witnesses' opinions prejudiced him. While "[e]ven the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client," based on our review of the record, we cannot conclude that trial court's preparation fell "below an objective standard of reasonableness based on prevailing professional norms." *Wentz v. State*, 766 N.E.2d 351, 361 (Ind. 2002), *habeas corpus denied,* 2009 WL 136182 (S.D. Ind. Jan. 20, 2009); *French*, 778 N.E.2d at 824.

[13] In similar vein, Hoglund asserts that his trial counsel "provided deficient performance by failing to use the transcripts of A.H.'s deposition to impeach her during trial." (Appellant's Br. p. 13). The post-conviction court characterized trial counsel's cross-examination of A.H. as follows: "[w]hile [trial counsel] may not have artfully impeached A.H.'s testimony at trial by using a prior inconsistent statement made during her pre-trial discovery deposition about the flavor of the substance Hoglund placed on his penis before violating her, or utilized the perfect trial strategy, these tactical and strategic shortcomings did not individually or cumulatively render his representation ineffective." (Appellant's App. p. 42).

As noted by Hoglund, during closing arguments, trial counsel focused on A.H.'s differing accounts of what type of container the substance came in, how it was applied, and whether it was a liquid, a lotion, or an oil. During direct appeal, our supreme court termed trial counsel's cross-examination of A.H. as "aggressive." *Hoglund*, 962 N.E.2d at 1238. Accordingly, even though trial counsel's cross-examination regarding the flavors of the substance was inartful, in light of the other discrepancies that trial counsel managed to elicit from A.H. and place in front of the jury, we cannot conclude that his performance was defective.

## II. *Vouching Testimony.*

With respect to Hoglund's argument that trial counsel "provided deficient performance by failing to object consistently to vouching testimony" uttered by the State's expert witnesses, we reach a similar result. (Appellant's Br. p. 14). To prevail on a claim of ineffective assistance of counsel due to the failure to object, the defendant must show an objection would have been sustained if made. *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007), *reh'g denied, cert. denied,* 555 U.S. 972 (2008). As recognized by our supreme court on direct appeal, trial counsel did object to some vouching testimony but not consistently with every disputed statement. At the time of Hoglund's trial, the law in Indiana permitted "some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, and that the child is not prone to exaggerate or fantasize about sexual matters." *Lawrence v. State*, 464 N.E.2d 923, 925 (Ind. 1984) *overruled by*

*Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012). Accordingly, until the supreme court's direct appeal decision in this case, the trial court would not have sustained an objection, should one have been timely made. "'An attorney is not required to anticipate changes in the law and object accordingly' in order to be considered effective." *Smylie v. State*, 823 N.E.2d 679, 690 (Ind. 2005), *cert denied* 546 U.S. 976 (2005) (citing *Fulmer v. State*, 523, N.E.2d 754, 757-58 (Ind. 1988)).

### III. *Mistrial.*

[16] In addition, Hoglund complains that his trial counsel's performance was ineffective because he failed "to request a mistrial in response to direct and overt vouching testimony." (Appellant's Br. p. 15). Although pre-*Hoglund* precedents permitted the admission of vouching testimony, this admissibility was not limitless. Opinions by parents, teachers, and others that the child is not prone to exaggerate or fantasize about sexual matters "facilitate an original credibility assessment of the child by the trier of fact, so long as they do not take the direct form of "I believe the child's story," or "[i]n my opinion the child is telling the truth." *Lawrence*, 464 N.E.2d at 925. Relying on this exception to the admissibility of vouching testimony, Hoglund disputes Dr. Butler's admitted testimony that she "believe[d] that what [A.H.] told me was the truth because of her age[.]" (Trial Transcript p. 82). Even though trial counsel objected to the statement, he did not request a mistrial.

[17]     We agree that the statement falls within the vouching testimony exception as it improperly took the "direct form" and improperly invaded the province of the jury. *See id*. Nevertheless, immediately following the objection to the improper statement, the trial court admonished the jury, instructing them that the statement would be "stricken from the record and [they] should treat that as if it had never been said." (Trial Tr. p. 83). A mistrial is "an extreme remedy granted only when no other method can rectify the situation." *Underwood v. State*, 644 N.E.2d 108, 111 (Ind. 1994). But "[a] timely and accurate admonition is presumed to cure any error in the admission of evidence." *Heavrin v. State*, 675 N.E.2d 1075, 1084 (Ind. 1996), *reh'g denied*. As the trial court properly admonished the jury to disregard the improper vouching statement, trial counsel's request for a mistrial would have been denied. Accordingly, trial counsel's performance was effective.

### IV. *Hearsay Statements.*

[18]     Lastly, Hoglund contends that his trial counsel failed to appropriately object to A.H.'s hearsay statements as testified to by the State's expert witnesses, Dr. Mayle and Counselor Shestak. Hoglund objected on hearsay grounds, but the trial court admitted the hearsay statements based on the State's assertion that they had been offered pursuant to Ind. Evidence Rule 803(4), *i.e.,* statements made for the purpose of medical diagnosis or treatment.

[19]     For statements to be admitted under this exception to the hearsay rules, the statements must be "made by persons who are seeking medical diagnosis or

treatment and describing the medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid. R. 803(4). This exception is grounded in a belief that the declarant's self-interest in obtaining proper medical treatment makes such a statement reliable enough for admission at trial. *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013).

[20] This belief of reliability necessitates a two-step analysis for admission under Rule 803(4): First, "is the declarant motivated to provide truthful information in order to promote diagnosis and treatment," and second, "is the content of statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment." *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996). "Statements made by victims of sexual assault or molestation about the nature of the assault or abuse—even those identifying the perpetrator—generally satisfy the second prong of the analysis because they assist medical providers in recommending potential treatment for sexually transmitted disease, pregnancy testing, psychological counseling, and discharge instructions." *VanPatten*, 986 N.E.2d at 260.

[21] The first prong of the test, the declarant's motive to promote treatment or diagnosis is equally crucial to a determination of reliability. *McClain*, 675 N.E.2d at 331. "[T]he declarant must subjectively believe that he was making the statement for the purpose of receiving medical diagnosis or treatment." *Id*. With most declarants, this is generally a simple matter: "[o]ften, for example

where a patient consults with a physician, the declarant's desire to seek and receive treatment may be inferred from the circumstances." *Id.*

[22] But in cases like the one here, where the declarant is a young child brought to the medical provider by a parent, we have acknowledged that such an inference may be less than obvious. *See id.* Such young children may not understand the nature of the examination, the function of the examiner, and may not necessarily make the necessary link between truthful responses and accurate medical treatment. *See VanPatten*, 986 N.E.2d at 261. In that circumstance, "there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information." *McClain,* 675 N.E.2d at 331. This evidence does not necessarily require testimony from the child-declarant; it may be received in the form of foundational testimony from the medical professional detailing the interaction between him or her and the declarant, how he or she explained his role to the declarant, and an affirmation that the declarant understood that role. *Id.* But whatever its source, this foundation must be present and sufficient. *VanPatten*, 986 N.E.2d at 261.

[23] Our review of the record indicates that Dr. Mayle testified, without objection from Hoglund's trial counsel, about A.H.'s statements describing the abuse she had suffered. Because of the total absence of any foundational testimony by Dr. Mayle that A.H. understood the psychologist's role, trial counsel's performance was defective by failing to object. Likewise, while counselor Shestak testified to her standard procedure and standard questionnaire, there was no detailed questioning specifically tailored to A.H.'s understanding of her

role. Even though trial counsel objected to A.H.'s hearsay statements about the molestation, the trial court admitted counselor Shestak's statements based on Evid. R. 803(4). Trial counsel did not object based on the lack of foundation to admit A.H.'s hearsay statements.

Nevertheless, "errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party. *VanPatten*, 989 N.E.2d at 267. "Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." *Id*. In the present case, A.H. was present at trial, testified, and was aggressively cross-examined. A.H.'s testimony on the stand mirrored the hearsay testimony provided by both Dr. Mayle and counselor Shestak, making the expert witnesses' testimony merely cumulative and, at most, harmless error. Therefore, we cannot conclude that trial counsel provided ineffective assistance.

## CONCLUSION

Based on the foregoing, we hold that trial counsel's performance was not ineffective and the post-conviction court properly denied Hoglund's petition for post-conviction relief.

Affirmed.

Najam, J. and May, J. concur