

**FILED**

Dec 28 2018, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| Derick W. Steele | Curtis T. Hill, Jr. |
| Kokomo, Indiana | Attorney General of Indiana |
| | Matthew B. Mackenzie |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dion C. Cannon, | December 28, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 34A04-1708-CR-1784 |
| v. | Appeal from the Howard Superior Court |
| State of Indiana, | The Honorable William C. Menges, Jr., Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 34D01-1511-F3-985 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Dion C. Cannon (Cannon), appeals the trial court's imposition of a consecutive sentence following a guilty plea.

We affirm.

# ISSUE

Cannon presents us with one issue on appeal, which we restate as: Whether the trial court appropriately imposed a consecutive sentence.

# FACTS AND PROCEDURAL HISTORY

On January 16, 2014, August 17, 2015, and August 24, 2015, police officers with the Kokomo Police Department, assisted by confidential informants, engaged in several controlled buys of narcotics from Cannon. On November 5, 2015, the State filed an Information under cause number 34D01-1511-F3-985 (Cause F3-985), charging Cannon with three Counts of dealing a narcotic drug as Level 3 felonies, two Counts of dealing a narcotic drug as Level 5 felonies, and one Count of dealing cocaine, as a Class A felony. A warrant was issued under seal for Cannon's arrest following the filing of these charges.

On November 18, 2015, officers with the Kokomo Police Department served the sealed arrest warrant on Cannon at his residence. When the officers knocked on the residence's door, Cannon, who was alone in the house, yelled, "oh s***, just a minute." *Cannon v. State*, 99 N.E.3d 274, 277 (Ind. Ct. App. 2018), *trans. denied*. From a window, the officers observed Cannon conceal

something and when he opened the door, the officers detected the odor of burnt marijuana. After Cannon was handcuffed and read his rights, Cannon admitted that "it was marijuana, and that's all the illegal drugs that [I have] in the house." *Id*. Based on Cannon's statement and the smell of marijuana, the officers obtained a search warrant for the residence. Following evidence recovered during the execution of the search warrant, the State filed an Information under Cause number 34D01-1511-F2-1036 (Cause F2-1036), charging Cannon with dealing a narcotic drug as a Level 2 felony, possession of a narcotic drug as a Level 3 felony, neglect of a dependent as a Level 5 felony, theft of a firearm as a Level 6 felony, possession of marijuana as a Level 6 felony, and maintaining a common nuisance as a Level 6 felony. After a jury trial, Cannon was found guilty of the Level 3 felony possession of a narcotic drug, Class A misdemeanor possession of marijuana, and Level 6 felony maintaining a common nuisance. On June 13, 2017, the trial court sentenced Cannon to an aggregate sentence of fifteen years. We affirmed his sentence on appeal.

[6] After Cannon was convicted and sentenced under Cause F2-1036, Cannon entered into a plea agreement with the State in the instant Cause F3-985, in which he agreed to plead guilty to dealing a narcotic drug as a Level 5 felony, with dismissal of the remaining Counts and sentencing left to the discretion of the trial court. On July 25, 2017, the trial court conducted a sentencing hearing in Cause F3-985. At the completion of the evidence, the trial court sentenced

Cannon to 1,825 days in the Department of Correction, with the sentence to run consecutive to the sentence imposed in Cause F2-1036.

[7] Cannon now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

[8] Cannon contends that the trial court abused its discretion by ordering his sentence to be served consecutively to an already imposed sentence in a separate case. This court has the constitutional authority to revise a sentence authorized by statute, if "after due consideration of the trial court's decision," the court finds that the sentence imposed is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B). The question under App. R. 7(B) is "not whether another sentence is more appropriate" but rather "whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The burden is on the defendant to persuade the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Therefore, when reviewing a sentence, our principal role is to "leaven the outliers" rather than necessarily achieve what is perceived as the "correct" result. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We do not look to determine if the sentence was inappropriate; instead, we look to ensure the sentence was not inappropriate. *King*, 894 N.E.2d at 268.

[9] In disputing his sentence, Cannon claims that, pursuant to the rationale advanced in *Beno v. State*, 581 N.E.2d 922 (Ind. 1999) and its progeny, the State cannot be allowed "to create State-sponsored criminal activity, cause a delay in criminal prosecution, and then stack charges resulting directly from the evidence obtained during the State-sponsored criminal activity." (Appellant's Br. p. 9). In *Beno*, our supreme court held that a series of undercover drug buys performed during a sting operation, while permissible, did not create a circumstance in which it would be "appropriate to then impose maximum and consecutive sentences for each additional violation." *Id* at 924. The court elaborated that

> [a]s a result of this operation, Beno was hooked once. The State then chose to let out a little more line and hook Beno for a second offense. There is nothing that would have prevented the State from conducting any number of additional buys and thereby hook Beno for additional crimes with each subsequent sale. We understand the rationale behind conducting more than one buy during a sting operation, however, we do not consider it appropriate to then impose maximum and consecutive sentences for each additional violation. If Beno, for instance, had sold drugs to different persons, or if he had provided a different type of drug during each buy, the consecutive sentences imposed might seem more appropriate. Here, however, because the crimes committed where nearly identical State-sponsored buys, consecutive sentences were inappropriate.

*Id.*

[10] Seven years later, our supreme court expanded on *Beno*'s precedent in *Eckelbarger v. State*, 51 N.E.3d 169 (Ind. 2016). In *Eckelbarger*, the State, through

an informant, purchased methamphetamine from Eckelbarger on two occasions and then procured a search warrant based on the informant's buys. *Id.* at 170. During the execution of the warrant, methamphetamine precursors and evidence of previous manufacturing were recovered. *Id.* Eckelbarger was charged and convicted of two Counts of dealing methamphetamine by delivery, one Count of dealing methamphetamine by manufacture, and one Count of possession of precursors. *Id.* The two delivery Counts were to be served concurrent to each other, and consecutive to the manufacturing and possession Counts, which were in turn to be served concurrent to each other. *Id.* Our supreme court noted that "consecutive sentences are not appropriate when the State sponsors a series of virtually identical offenses." *Id.* Moreover, under the same reasoning, the manufacturing and possession convictions, which "were supported by evidence seized pursuant to a search warrant based on the dealing methamphetamine by delivery Counts," created a circumstance where the imposition of consecutive sentences was inappropriate. *Id.*

[11] The next year, we applied these precedents on a slightly different variation of the facts. In *Walton v. State*, 81 N.E.3d 679, 680 (Ind. Ct. App. 2017), we analyzed the situation where the State conducted a series of controlled buys over several months in 2015. After concluding the controlled buys but before Walton was charged for his conduct, the State obtained a search warrant for Walton's properties. *Id.* The outcome of the controlled buys resulted in Walton being charged with five Counts of dealing cocaine, while the execution of the search warrant resulted in him being charged with six additional Counts

concerning dealing cocaine, conspiracy to commit dealing in cocaine, maintaining a common nuisance, and two Counts of possession of a firearm by a serious violent felon. *Id*. Walton was convicted on all Counts, and the trial court imposed a 34-year sentence for the controlled buys, and a 30-year sentence for the charges resulting from the search warrant for an aggregate, consecutive sentence of 64 years. *Id*. Mindful of our supreme court's *Eckelbarger* decision, we held that because the controlled buys led to a search of Walton's properties, which, in turn, resulted in additional charges and convictions that were supported by "evidence seized as a direct result of the controlled buys," the drug-related convictions resulting from the search warrant could not be imposed consecutively to the convictions resulting from the controlled buys. *Id*. at 683.

[12] Based on the facts before us, we conclude that *Beno* and its progeny are inapposite to the instant Cause because the search warrant which supported the charges in Cause F2-1036 was not obtained in furtherance of an ongoing investigation but rather was requested based on the independent observations of police officers. The evidence reflects that after law enforcement officers wrapped up a month-long investigation, including a series of undercover buys, the State filed charges, and a sealed warrant was issued for Cannon's arrest. Accordingly, the investigation was completed and Cause F3-985 was initiated. When the police officers served the warrant, they were not focusing on new buys or on a search of the residence; rather, they attempted to execute Cannon's arrest. However, upon contacting Cannon, the officers detected the odor of

marijuana, whereupon Cannon made some incriminating statements. Based on the officers' observations and Cannon's admissions, the officers applied for and obtained a search warrant. As a result of the evidence gathered during the execution of the search warrant, a new Information was filed in Cause F2-1036. Accordingly, the charges in Cause F2-1036 are derived from actions independent and distinct from the charges in Cause F3-985 and are not a continuation of the earlier charges. As no close nexus exists between the State-sponsored purchases and the State's charges derived from the execution of the search warrant, *Beno* and its progeny are distinguishable and the trial court did not abuse its discretion by imposing consecutive sentences.

## CONCLUSION

Based on the foregoing, we conclude that the trial court's imposition of consecutive sentences is not inappropriate pursuant to Indiana Appellate Rule 7(B).

Affirmed.

Kirsch, J. and Robb, J. concur