## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 28 2019, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Clifford M. Davenport
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin R. Shaul,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

June 28, 2019

Court of Appeals Case No.
18A-CR-2260

Appeal from the Madison Circuit Court

The Honorable Mark Dudley, Judge

Trial Court Cause No.
48C06-1703-F2-608

**May, Judge.**

[1] Justin R. Shaul appeals his convictions of two counts of Level 2 felony dealing in methamphetamine[1] and one count of Level 3 felony dealing in methamphetamine.[2] He presents three issues for our review, which we revise and restate as:

I.    Whether venue was proper in Madison County;

II.   Whether prosecutorial misconduct amounting to fundamental error occurred during discovery; and

III.  Whether his sentence is inappropriate.

We affirm.

# Facts and Procedural History

[2] Shaul was born in Anderson, Indiana, and attended Madison Heights High School in Anderson. He moved to Florida and Alabama for a time but returned to Indiana. Upon his return, he lived in Indianapolis and was a friend of Madison Parkhurst. Wendy Whitaker is Parkhurst's mother, and Whitaker met Shaul through her daughter. Whitaker did not approve of Shaul's association with her daughter.

---

[1] Ind. Code § 35-48-4-1.1(e).

[2] Ind. Code § 35-48-4-1.1(d).

[3] On February 6, 2017, Whitaker contacted the Madison County Drug Task Force ("DTF") and conveyed her belief that Shaul was distributing methamphetamine in Madison County. Consequently, Whitaker agreed to work for DTF as a confidential informant and participate in a series of controlled buy operations.

[4] On February 7, 2017, Whitaker called Shaul to set up the first controlled buy. Whitaker placed the call from her home in Anderson. Shaul mentioned he was close to Whitaker's house and offered to stop by her house. However, DTF was not prepared for a controlled buy to occur. Whitaker arranged for the buy to occur later in the day, and Shaul indicated Whitaker would need to travel to Indianapolis to buy the drugs.

[5] Before the buy, Whitaker met DTF officers at the White River Fitness Club in Anderson. The DTF officers searched Whitaker, gave her $500 in marked bills, and equipped her with a surreptitious recording device. Whitaker did not possess any methamphetamine at the time of the pre-buy search. DTF Detective Mike Anderson, who was in plain clothes, drove Whitaker to Shaul's residence in Indianapolis. DTF Officers Dwiggins and Gutherie also drove to Indianapolis, but they parked away from Shaul's house. Whitaker bought 18.96 grams of methamphetamine from Shaul for $500. During the buy, Shaul bragged to Whitaker about his drug dealing operation and claimed he would change his voice in court if he ever got caught. After leaving Shaul's residence, Whitaker gave the methamphetamine to Detective Anderson, and the two

rendezvoused with the two additional DTF officers at an intersection in Castleton for the post-buy search and interview.

[6] From her house in Anderson, Whitaker contacted Shaul via Facebook on February 14, 2017, to set up a second controlled buy. On February 15, 2017, Whitaker again met DTF Officers Anderson, Dwiggins, and Gutherie at the White River Fitness Club in Anderson, where the officers conducted a pre-buy search, gave her $500 in marked bills, and equipped her with a recording device. While leaving Madison County, Whitaker placed a phone call to Shaul, who confirmed the buy. DTF Detective Anderson drove Whitaker to Shaul's residence in Indianapolis, and Whitaker purchased 9.40 grams of methamphetamine from Shaul. Detective Anderson drove Whitaker to the same intersection used after the controlled buy on February 7, and there the DTF officers searched Whitaker and conducted the post-buy interview.

[7] On March 2, 2017, Whitaker called Shaul from her house in Anderson to set up a third controlled buy, and the buy occurred during the early morning hours of March 3, 2017. Whitaker went to her boyfriend's house in Indianapolis late on March 2. The DTF officers met Whitaker at her boyfriend's house in Indianapolis, and they went to the parking lot of the Hooter's restaurant in Castleton to complete the pre-buy preparations. Then, Detective Anderson and Whitaker went to Shaul's residence, where Whitaker purchased 21.95 grams of methamphetamine for $800. She and Detective Anderson met with the other DTF officers to conduct the post-buy search and interview at the same intersection previously used.

[8] The State charged Shaul with two counts of Level 2 felony dealing in methamphetamine and one count of Level 3 felony dealing in methamphetamine. At the beginning of the litigation, Shual's counsel requested certain materials that would reveal the identity of the confidential informant, Whitaker. During a status conference on February 9, 2018, Shaul's counsel reported he had discussed production of those materials with the State and they had reached the understanding that the State would withdraw all plea offers once the materials were produced.

[9] At the final pretrial conference on June 27, 2018, Shaul's counsel stated he wished to depose the confidential informant, but he did not request a continuance of the trial date. The parties discussed outstanding discovery, with the State indicating that general discovery had already been given to Shaul and any remaining documents would be given to him by the end of the week. The State acknowledged it would need to disclose the confidential informant's identity sufficiently in advance of trial for Shaul to be able to depose Whitaker, and Shaul deposed Whitaker on July 19, 2018.

[10] On July 19, 2018, Shaul moved for change of venue. The court held a hearing on the motion and denied it. The court then held a three-day jury trial beginning on July 23, 2018. The jury returned a verdict of guilty on all counts, and the court entered judgments of conviction. During his sentencing hearing, Shaul quibbled with the number of convictions reported in his pre-sentence investigation report, but he confirmed he had five previous felony and

seventeen previous misdemeanor convictions.  The court sentenced Shaul to an aggregate term of twenty-five years in the Indiana Department of Correction.

# Discussion and Decision

## Venue

[11]  Defendants are entitled to be tried in the county where the offense was allegedly committed.  *Baugh v. State*, 801 N.E.2d 629, 631 (Ind. 2004); *see also* Ind. Const. Art. I, § 13; Ind. Code § 35-32-2-1.  When venue is not an element of the offense, the State is only required to demonstrate proper venue by a preponderance of the evidence.  *Id*.  More than one county may have concurrent jurisdiction to try a crime.  *Henke v. State*, 801 N.E.2d 633, 634 (Ind. 2004) (holding motorist's conduct in operating vehicle while intoxicated on border road for two counties had sufficient nexus with both counties to permit prosecution in either).  "The standard of review for a claim that the evidence was insufficient to prove venue is the same as for other claims of insufficient evidence."  *Eberle v. State*, 942 N.E.2d 848, 855 (Ind. Ct. App. 2011), *trans. denied*.  Consequently, we do not reweigh the evidence or assess credibility.  *Id*.  Rather, we "look to the evidence and reasonable inferences therefrom which support the conclusion of requisite venue."  *Id*.

[12]  Venue is appropriate in a county if the defendant directs criminal activity into the county.  *See Baugh*, 801 N.E.2d at 632 ("if the defendant directs acts into a county, venue is proper in that county").  For example, we held a Marion County resident may be tried in Vanderburgh County when the Marion County

resident solicited an undercover officer in Evansville, who was posing as a thirteen-year-old boy, for sex. *Laughner v. State*, 769 N.E.2d 1147, 1157 (Ind. Ct. App. 2002), *reh'g denied, trans. denied, cert. denied* 538 U.S. 1013 (2003), *but overruled on other grounds by Fajardo v. State*, 859 N.E.2d 1201, 1206 n.9 (Ind. 2007). Venue was proper in Vanderburgh County because the Marion County resident had taken action directed at Vanderburgh County. *Id.* Similarly, a person who fires a gun over a state line may be tried in either the county where the person fired the gun or the county where the victim was hit. *Wurster v. State*, 715 N.E.2d 341, 350 (Ind. 1999), *reh'g denied*.

[13]     Shaul was aware Whitaker was a resident of Madison County when she initiated the transactions because Shaul and Whitaker had met before and Shaul was a friend of Whitaker's daughter. Whitaker was in Madison County when she arranged all three of the buys, and Shaul initially offered to deliver the drugs to Whitaker's house for the first buy. Although the drug sales were completed in Marion County, we may reasonably infer that Shaul understood Whitaker was going to return to Madison County with the drugs.

[14]     Additionally, Shaul's own words demonstrate he was willing to supply Madison County residents with narcotics. Shaul described his business model by saying, "I go around these cities, and I find these dudes that sell the most dope, and I tell them, I can get you the best dope for a cheaper price." (St. Ex. 12; St. Ex. 12A at 89.) In fact, Shaul told Whitaker, "I don't understand why people in Anderson didn't [sic] realize that I'm the mother****ing ticket." (St. Ex. 12; St. Ex. 12A at 88.) In the case at bar, Madison County was a proper

venue because there was a sufficient nexus between Shaul's criminal activity and Madison County. Shaul could have been prosecuted in Marion County, but his criminal activity sufficiently implicated the interests of the citizens of Madison County to make venue in Madison County proper. *See Heinzman v. State*, 895 N.E.2d 716, 723 (Ind. Ct. App. 2008) (holding evidence supported finding of venue in Hamilton County when defendant drove from Hamilton County to gain access to victim and communicated with victim from Hamilton County in furtherance of his offenses), *trans. denied*.

## Prosecutorial Misconduct

Shaul contends the State committed prosecutorial misconduct by not timely responding to discovery. However, he failed to raise a contemporaneous objection to this alleged misconduct. Therefore, he "must establish not only the grounds for prosecutorial misconduct but also the additional grounds for fundamental error." *McKinney v. State*, 873 N.E.2d 630, 642 (Ind. Ct. App. 2007), *trans. denied*. Fundamental error occurs when the violations "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002). Shaul alleges the prosecutor supplied requested discovery only after ending plea negotiations and did not supply it with sufficient time for defense counsel to review and advise Shaul. He also asserts he would have considered accepting a plea bargain had he known the confidential informant's identity sooner.

[16]     The State has a valid interest in protecting the identity of a confidential informant, and therefore "the general policy is to prevent the disclosure of the identity of a confidential informant unless the defendant can demonstrate that disclosure is relevant and helpful to his defense or is necessary for a fair trial." *Shell v. State*, 927 N.E.2d 413, 420 (Ind. Ct. App. 2010). "Bare speculation that the informant's identity may possibly prove useful is not enough to justify disclosure, and an informant's identity shall not be disclosed to permit a mere 'fishing expedition.'" *Id*. Prematurely revealing the identity of a confidential informant risks retaliation against the informant, compromising current investigations, and chilling future cooperation. As a result, and in some circumstances, the State may convict a criminal defendant without disclosing a confidential informant's identity. *Furman v. State*, 496 N.E.2d 811, 814 (Ind. 1980) (holding trial court's failure to order pretrial disclosure of confidential informant's identity was not an abuse of discretion).

[17]     Shaul was not prejudiced as the result of any delay in revealing the confidential informant's identity. "The purpose of discovery is to put the other party on notice of the evidence upon which a party intends to rely at trial." *Bennett v. State*, 5 N.E.3d 498, 511 (Ind. Ct. App. 2014), *reh'g denied*, *trans. denied*. The general remedy for curing a discovery violation is a continuance. *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000). A defendant waives any discovery argument on appeal if a continuance may have cured the alleged violation, but the defendant failed to request a continuance. *Id*. The trial rules anticipate that counsel will work together to effectuate the discovery process. *See* Ind. T. R.

26(F) (requiring counsel to make reasonable effort to reach an agreement with opposing party before filing a motion to compel). Shaul's counsel indicated at the February 9, 2018, status conference and the June 27, 2018, pretrial hearing that he and the prosecutor had discussed the State's discovery compliance. Shaul's counsel did not ask the trial court to compel discovery. Also, Shaul's counsel did not seek to continue Shaul's trial during the final pre-trial conference. In fact, Shaul's counsel indicated that he was willing and able to proceed with trial on July 23, 2018. Shaul deposed Whitaker prior to trial and relied on her deposition testimony in arguing his motion for change of venue.

[18]     Additionally, Shaul's claim that the discovery delays by the State impeded his decision to accept a plea deal lack merit. Shaul's counsel never indicated that a delay by the State in revealing the identity of the confidential informant affected Shaul's decision to accept a plea deal. In fact, Shaul's counsel informed the court that Shaul was not interested in accepting a plea deal, and Shaul intended to take his case to trial. Shaul had sufficient information about the State's case at the time this representation was made to make an informed decision regarding whether to accept a plea deal. He had access to the probable cause affidavit which revealed the dates of the transactions, where the transactions occurred, the controlled substance Shaul supplied, and the amount of the controlled substance he supplied. Consequently, any discovery delays related to revealing the identity of the confidential informant do not amount to fundamental error. *See Murray v. State*, 442 N.E.2d 1012, 1018 (Ind. 1982) (holding asserted discovery violations did not warrant reversal).

## Shaul's Sentence

[19]     We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. Appellate Rule 7(B).  We look "not whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate."  *Cannon v. State*, 117 N.E.3d 643, 645 (Ind. Ct. App. 2018) (internal quotation marks omitted), *trans. denied*.  Shaul bears the burden of persuading us that his sentence is inappropriate. *Id*.  We are very deferential to the trial court in reviewing sentencing decisions.  *Id*.

[20]     Shaul was convicted of two counts of Level 2 felony dealing in methamphetamine and one count of Level 3 felony dealing in methamphetamine.  A Level 2 felony carries a minimum term of ten years and a maximum term of thirty years, with an advisory sentence of seventeen and one-half years.  Ind. Code § 35-50-2-4.5.  A Level 3 felony carries a minimum term of three years and a maximum term of sixteen years, with an advisory sentence of nine years.  Ind. Code § 35-50-2-5.  The trial court imposed an executed sentence of twenty-five years on each of the Level 2 felony counts and an executed sentence of thirteen years on the Level 3 felony count, and then the court ordered the sentences served concurrently.

[21]     As the State aptly observes, Shaul's offense demonstrates "he was a high level drug dealer who was ready and willing to supply methamphetamine on a

regular basis." (Appellee Br. at 21.) Shaul's own comments demonstrate his desire to supply other drug dealers with drugs, and Shaul sold large quantities of drugs to Whitaker on multiple occasions. Further, Shaul has a lengthy criminal record, including at least seventeen misdemeanor and five felony convictions. Shaul had four open cases at the time of completion of the presentence investigation report, and he was on probation when he committed the instant offenses. While Shaul's imposed sentence is longer than what the presentence investigation report recommended, we cannot say it is inappropriate in light of his offenses or his character.[3] *See Fugate v. State*, 516 N.E.2d 75, 80 (Ind. Ct. App. 1987) (stating "trial court need not base its sentencing determination on the presentence investigation report or upon the probation officer's sentencing recommendation").

# Conclusion

[22] Madison County was a proper venue, Shaul has not demonstrated the prosecutor engaged in misconduct, and Shaul's sentence was not inappropriate

---

[3] Shaul also claims the trial judge was biased against him because Shaul filed a lawsuit against the trial judge while this criminal action was pending. However, Shaul fails to point to any comments by the trial judge at sentencing that demonstrate bias. *See Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002) ("The law presumes that a judge is unbiased and unprejudiced. And to rebut that presumption, a defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy.") (internal citations omitted). Further, the judge's correct denial of Shaul's motion for change of venue cannot equate to bias against Shaul. *See Cook v. State*, 612 N.E.2d 1085, 1088 (Ind. Ct. App. 1993) ("Adverse rulings or the imposition of the maximum possible sentence do not support a claim of bias."). Shaul fails to demonstrate his sentence was the result of bias.

given his long criminal history and the large amounts of narcotics involved in these offenses. Accordingly, we affirm.

[23] Affirmed.

Mathias, J., and Brown, J., concur.